### ST. LOUIS-S. F. RY. CO. v. BENGAL LBR. CO.

No. 19586. Opinion Filed Sept. 30, 1930.

E. T. Miller, Cruce & Franklin, and W. T. Stratton, for plaintiff in error.

Hunt & Eagleton, for defendant in error.

HERR, C. This is an action originally brought in the district court of Tulsa county by St. Louis-San Francisco Railway Company against the Bengal Lumber Company, to recover damages caused to its tracks by fire.

Plaintiff, in its petition, in substance, alleges that it leased a portion of its right of way, under a written lease, to N. C. Faulkner to be used as a site for a planing mill and lumber shed; that thereafter Faulkner sold said mill and shed to defendant and assigned to it his lease and that defendant assumed all the obligations thereunder; that subsequent thereto said mill and shed were destroyed by fire; that the cause of the fire was unknown to plaintiff, but within the knowledge or means of knowledge of defendant; that said fire was communicated to the tracks of plaintiff, thereby causing a loss to it in the sum of $529.59. Plaintiff further alleges that under the provisions of the lease, defendant agreed to save and hold it harmless from all damages to its property resulting from fire communicated from any building, structure, or other property located on the leased premises. Defendant, in its answer, denied liability under the lease and counterclaimed damages against plaintiff in the sum of $1,314.56 because of alleged destruction by fire of two cars of lumber which it had loaded for shipment and for which bills of lading were issued to it by plaintiff; that such loss occurred while the lumber was waiting transportation. The case was tried on an agreed statement of facts, resulting in judgment against plaintiff and in favor of defendant on its counterclaim in the sum prayed for. Plaintiff appeals.

It is contended by appellant that the judgment is contrary to law. It is stipulated that on June 26, 1924, a fire from causes unknown occurred in the mill and shed located on the leased premises, which fire was communicated to plaintiff's tracks, causing damage in the sum of $529.59; and that the same fire also destroyed two cars of lumber belonging to defendant, which lumber had then been loaded on plaintiff's cars and bills of lading issued by plaintiff to defendant therefor; and that such lumber was at said time awaiting transportation by plaintiff; that the destruction of plaintiff's tracks and the lumber, and the damages sustained by reason thereof, was the proximate and direct result of the fire originating in defendant's planing mill and communicated therefrom to the tracks of plaintiff. It is also agreed and stipulated that both parties are free from negligence.

The question of the liability of defendant to plaintiff, under stipulated facts, hinges upon the construction of the lease contract, and particularly section 11 thereof, which provides:

"In further consideration for the making of this lease, lessee hereby covenants and agrees to protect, indemnify and save harmless lessor from and against all damages, claims, demands, causes of action, suits, judgments, attorneys' fees, costs and expenses sustained or incurred by lessor resulting from fire communicated from any building, structure, improvement or other property located on said leased premises, or any part thereof, to any car or cars which may have been placed on any track or tracks of the railroad, and to the contents thereof, and to any and all other property, and resulting from injury to or death of persons and loss or destruction of or damage to property, caused in any manner by any acts or omissions, negligent or otherwise, of the lessee, or any of his agents, servants or employees."

The question here presented is: Does the clause in the lease, "caused in any manner by any acts or omissions, negligent or otherwise, of the lessee, or any of his agents, servants or employees," restrict the clause relative to damages from fire or does it only restrict the clause relating to damages re-

sulting otherwise than from fire? We think this question must be resolved in favor of defendant. The punctuation indicates that both clauses were intended to be restricted by the clause in question. It will be noticed that the restrictive clause is set off by a comma; that is, a comma appears after the word "property" in the clause, "and resulting from injury to or death of persons and loss or destruction of or damage to property," and immediately preceding the clause, "* * * caused in any manner by any acts or omissions," etc.

In paragraph 3 of the syllabus in the case of Tidal Oil Co. v. Roelfs, 77 Okla. 183, 187 Pac. 486, the following rule is announced:

"The rule is that no comma must be placed between restrictive adjuncts or clauses and that which they restrict. A restrictive clause, however, must be set off by a comma, when it refers to several antecedents which are themselves separated by that point."

Plaintiff, however, contends that punctuation should be disregarded and the contract construed in accordance with the intention of the parties and seeks to invoke the usual rules of construction. The contract is not ambiguous if read as punctuated. There, therefore, is no room for construction. Should punctuation be eliminated, the meaning of the contract would then become doubtful and ambiguous. Punctuation is, therefore, controlling. In the case of Tidal Oil Co. v. Roelfs, supra, the court said:

"It is due the parties to a contract in writing to assume that they know and understand the logical and grammatical use of words, phrases, and clauses chosen by them to convey the thought and purpose of their contract."

Under the stipulated facts and the authority above cited, plaintiff is not entitled to recover, for the reason that the facts fail to show that the fire was caused by an act or omission of defendant.

It is next contended that the court erred in rendering judgment in favor of defendant on its counterclaim. We cannot agree with this contention. Plaintiff was a qualified insurer of this shipment; the lumber destroyed was loaded by defendant in plaintiff's cars; it was accepted for shipment by plaintiff and bills of lading issued therefor; the shipment was destroyed while waiting transportation. This being true, plaintiff could only avoid liability by showing that the loss occurred under such circumstances as to exempt it from liability as an insurer.

It is argued that the loss was due to an act or default of the owner and that plaintiff is, therefore, not liable. We cannot agree with this contention. It is stipulated that the origin of the fire was unknown and that both parties were free from negligence. The stipulation that the fire arose on defendant's premises and was communicated therefrom to plaintiff's tracks and thus destroyed the lumber and the cars in which the same was loaded, falls far short of stipulating that the fire was caused by the act or fault of the owner.

In 10 C. J., at page 373, it is said:

"Where loss of, or injury to, goods while in the carrier's possession is shown, a prima facie case is made out against it, and the burden of proof then devolves on it to show that the loss or injury was due to one of the causes excepted at common law, such as an act of God or an act of the public enemy, an act or fault of the shipper, the inherent nature of, or defects in, the property shipped, or a seizure thereof under legal process, if it relies on such common-law exception as a defense. * * *"

The burden was on plaintiff to show that the loss was due to some act or fault of the owner or that the loss was due to some other cause exempting it from liability. This burden it failed to meet. Judgment was, therefore, properly rendered against it.

We have examined the authorities cited by plaintiff to sustain its contention. In our opinion, they do not reach the point here involved, and are, therefore, not controlling.

The conclusion reached may seem somewhat harsh as applied to the facts here presented, but even so we feel relief cannot, within legal principles, be granted plaintiff.

Judgment should be affirmed.

BENNETT, TEEHEE, REID, and DIFFENDAFFER, Commissioners, concur.

Note.—See under (1) 6 R. C. L. p. 841; R. C. L. Perm. Supp. p. 1834. (2) 6 R. C. L. p. 846; R. C. L. Perm. Supp. p. 1838. (3) 4 R. C. L. p. 920, et seq. R. C. L. Perm. Supp. p. 1241.