[Civ. No. 11932.   First Dist., Div. Two.   May 6, 1942.]

REMILLARD BRICK COMPANY (a Corporation), Respondent, v. REMILLARD-DANDINI COMPANY (a Corporation), Appellant.

W. E. Licking for Appellant.

Johnson & Harmon and Wm. H. Henderson for Respondent.

SPENCE, J.—In this action to recover on certain promissory notes, plaintiff obtained judgment for the amount

found by the trial court to be due as principal, interest and attorney's fees. Defendant appeals from said judgment.

The amended complaint contained four counts. The first count was based on a $6,500 promissory note dated February 28, 1935, and a similar note in like amount given in renewal thereof on December 9, 1936. Plaintiff sought to recover only interest on the first-mentioned promissory note and to recover principal and interest on the last-mentioned renewal note. The second count was based on a $6,000 promissory note dated February 28, 1935, which note was payable in installments of $100 per month. The third and fourth counts were based upon other promissory notes but these counts were dismissed by plaintiff at the outset of the trial.

The main issues presented to the trial court were those of alleged payment and of alleged partial failure of consideration. In support of its claims on these issues, defendant relied upon an agreement between plaintiff and defendant dated May 18, 1934. Said agreement was not pleaded in the answer nor was any counterclaim pleaded therein.

After introducing said promissory notes and evidence of nonpayment, plaintiff rested. Defendant then offered the agreement of May 18, 1934, which was admitted over the objection of plaintiff. Defendant also introduced other evidence concerning various dealings of the parties.

It appears that the action represents but one phase of the litigation in which said parties have been involved. In 1934, plaintiff corporation was engaged in the manufacture and sale of bricks and owned both real and personal property which the defendant corporation desired to acquire. By the above mentioned agreement plaintiff agreed to sell to defendant certain real and personal property which apparently included practically all of the assets of plaintiff. Defendant agreed to issue to plaintiff 300 shares of its capital stock, to pay plaintiff's current accounts payable which were listed in an attached schedule, and to execute in favor of plaintiff two promissory notes in the total sum of $60,000 secured by a mortgage. It was further provided that the defendant would take the real property subject to taxes but that all payments made by defendant on account of taxes which were then a lien on the real property should be credited by plaintiff "on account of said promissory notes hereinbefore referred to."

The parties proceeded under this agreement but about one year later, a new agreement was made. The new agreement

was not reduced to writing and the minutes of a directors' meeting of the defendant corporation constitute practically the only evidence of said agreement. Said minutes refer to the embarrassment of defendant in its financing by reason of the existence of its indebtedness to plaintiff; to the fact that plaintiff owned one-half of the stock of defendant; to the fact that negotiations had been in progress between plaintiff and defendant resulting in a new agreement whereby plaintiff agreed ''to cancel the mortgage notes for $60,000 and to take in lieu thereof unsecured notes of this corporation for a sum aggregating $20,500.'' Said minutes show that a motion was carried authorizing the officers of defendant to execute a series of notes in favor of plaintiff aggregating $20,500. The notes in question here were among the notes executed by defendant pursuant to said authorization.

The unusual bookkeeping practices of plaintiff and defendant are revealed by the evidence. These practices may be explained by certain facts not heretofore mentioned. Mr. A. O. Dandini was the president and a principal stockholder of defendant. Mrs. Lillian Dandini, his wife, was the president and a principal stockholder of plaintiff. As above indicated, plaintiff was a principal stockholder of defendant. Defendant originally acquired all of its property from plaintiff. It took over the brick business including the plant, the office, the records and the clerical help. Prior to the organization of defendant, Mr. Dandini was secretary of plaintiff, which office he continued to hold for some time thereafter. Later he became vice-president of plaintiff and continued to hold that office until 1939 or later. After the acquisition of the business by defendant, defendant collected rents for plaintiff on properties which plaintiff had not conveyed to defendant. Defendant purported to keep two accounts in relation to its affairs with plaintiff. For some time after the transfer, plaintiff kept no accounts, Mrs. Dandini apparently relying on Mr. Dandini and defendant to make the collections of rent and to keep proper accounts reflecting the status of the affairs of plaintiff and defendant. In referring to this situation, counsel for defendant stated on the trial ''. . . there wasn't any distinction between them and us up until very recently, as it was two family corporations with practically all papers in the same basket.''

The two above-mentioned accounts kept by defendant were

(1) the "note account" and (2) another account which was called in the testimony the "open account," or the "general account," or the "general open account" or the "transfer account" or the "general transfer account." A photostatic copy of the "note account," or that portion of the note account starting with June 1, 1939, and showing a balance at that date of $23,078, appears in the transcript as an exhibit marked "Plaintiff's A for Iden." We find no showing that this "note account" was admitted in evidence but, in any event, the series of figures found on said exhibit appears to offer little assistance in determining the issues presented. The other account above-mentioned does not appear in the transcript either as an exhibit for identification or as an exhibit admitted in evidence. The secretary of defendant testified that said account "consisted of a number of items both by way of debit and credit; that is a number of different transactions." He stated that it covered interest, rents, tax payments and other matters but "that account does not reflect any particular status . . . does not reflect a true balance due at any date to the Remillard Brick Company." One item of $1,850, and possibly others, were admittedly not chargeable to plaintiff. The secretary of defendant testified that the above-mentioned balance of $23,078 shown by the so-called note account as of June 1, 1939, included the above-mentioned notes issued in 1935 and aggregating $20,500 and also a further sum of $5,000 which was received from plaintiff in 1935 and for which no note was given. This note account totaling $25,500, was apparently reduced by carrying purported balances over from the other account. Later the above-mentioned $5,000 item, which was not evidenced by a note, was transferred by defendant from the note account to the other account and was finally charged off by defendant "as barred by the statute of limitations." It further appears that defendant credited itself on the note account with certain sums which it could not or did not collect on certain accounts receivable of plaintiff which were included in the property covered by the agreement of 1934  There was nothing however to show that plaintiff guaranteed the payment of any of said accounts receivable. We have discussed some of the aspects of these two accounts for while said accounts were not introduced in evidence, frequent reference was made thereto in the evidence and some of the items of said accounts were relied upon by defendant in support of its defenses of pay-

ment, or partial payment, and partial failure of consideration.

The trial court found with respect to the first count, that only interest to December 2, 1938, had been paid and that the entire principal sum of $6,500 and interest from December 2, 1938, remained owing and unpaid. It further found with respect to the second count that interest to March 1, 1940, had been paid and that a portion of the principal had been paid, leaving owing and unpaid on principal the sum of $1,929.28 together with interest from March 1, 1940. It further fixed the reasonable amounts for attorneys' fees. It further found that "none of the allegations of defendant's answer except as herein set forth and incorporated are true." Judgment was entered in favor of plaintiff in accordance with said findings.

■ Defendant first contends that the trial court erred in failing to make findings on certain material issues but our review of the pleadings leads us to the conclusion that the trial court made findings responsive to all the material issues made by the pleadings. On the issue of payment, the trial court found the amount paid and the amount remaining owing and unpaid on each note. On the issue of failure of consideration, the general finding above quoted was a finding against the allegation of defendant's answer creating that issue.

■ Defendant further contends that the trial court erred in not crediting defendant with a tax payment of $1,588.41 made by defendant. It claims that the taxes paid by said tax payment were a lien on the real property in 1934 when the agreement of 1934 was made and that, under the provisions of that agreement, defendant was entitled to have said tax payment credited on the notes involved here. We find no merit in this contention. The provisions of the agreement of 1934 referred to credits to be given on the secured notes totalling $60,000. About one year after the execution of said agreement, the parties entered into a new agreement whereby the secured notes totalling $60,000 were cancelled and plaintiff accepted unsecured notes totalling $20,500. There is no evidence whatever to show that the new agreement provided for any credits to be given to defendant on the last-mentioned notes for any tax payments theretofore or thereafter made.

■ The burden was on the defendant to show the existence of such an agreement and defendant failed to assume that burden. In this connection, defendant says that the findings are inconsistent in that certain tax payments were credited upon

the notes involved here while the $1,588.41 payment made in 1937 was not so credited. Be that as it may, we find nothing in the record to justify the crediting of the last-mentioned tax payment upon said notes.

Defendant further contends that the trial court erred in not crediting defendant with a payment of $380 made by defendant to Lester Herrick and Herrick, a firm of accountants. We find no merit in this contention. In support thereof, defendant again refers to the agreement of 1934. That agreement provided that defendant would assume and pay certain accounts payable of plaintiff as part of the consideration of that agreement. There was no provision for crediting defendant upon any notes with any sums so paid. Among the accounts payable listed in said agreement was an item of $1,850 due to said accountants. This amount was thereafter paid by defendant and defendant erroneously charged this payment against plaintiff on its books. It waived any claim to credit for that item at the time of the trial. It did claim credit, however, for an item of $380 paid by defendant to said accountants which it claimed was due to said accountants from plaintiff for work done by said accountants after the execution of the agreement of 1934. Here again defendant failed to introduce any evidence of any agreement which entitled it to a credit upon the notes involved here for said payment of $380. If defendant paid said item under the claimed circumstances, it could have properly set forth a counterclaim in its answer for the amount so paid but it failed to do so. In the absence of any agreement to credit said payment as a payment on the notes involved here, defendant may not complain that the trial court did not credit it as such payment. (*Borland* v. *Nevada Bank,* 99 Cal. 89, 94 [33 Pac. 737, 37 Am. St. Rep. 32] ; *Goodfellow* v. *Goodfellow,* 219 Cal. 548, 556 [27 P. (2d) 898].)

With respect to the note involved in the second count, defendant contends that the trial court erred in charging defendant with interest on said note. This contention arises out of the fact that when said note was executed upon a printed form, a line was drawn through the printed words "Said installments shall bear interest after maturity at the rate of seven per cent (7%) per annum." The material portion of the note, showing the portion through which the line was drawn, reads as follows:

"For Value Received, Remillard-Dandini Company, a Cali-

fornia corporation, hereby promises to pay to Remillard Brick Company, or order, the sum of Six Thousand Dollars ($6000.00), payable in installments of One Hundred Dollars ($100.00) monthly, commencing June 1, 1935. ~~Said installments shall bear interest after maturity at the rate of seven per cent. (7%) per annum,~~ and in the event that any installments of this note shall not be paid when due, then the whole of said promissory note shall, at the election of the holder, without notice, become forthwith immediately due and payable.''

In 17 C. J. S. 734, section 317, it is said ''Contracts must be construed with reference to the words which they contain, and words which have been erased or crossed out are not, under some authorities, to be considered; it has been said however, that such words may be considered in ascertaining the intention of the parties where the contract is ambiguous.'' (See *Kennon* v. *Shepard*, 236 Mass. 57 [127 N. E. 426]; *Watson* v. *Paschall*, 93 S. C. 537 [77 S. E. 291]; *Straub* v. *Screven*, 19 S. C. 445; *Curtis* v. *M. L. Virden Lumber Co.*, 159 Miss. 454 [132 So. 341].)

Reading said note, without reference to the stricken words, we find nothing ambiguous. Defendant concedes that where no interest is specified in a note, interest is payable from the maturity date at the rate of seven per cent per annum. (*Nesbit* v. *MacDonald*, 203 Cal. 219 [263 Pac. 1007]; *Bank of United States* v. *Foreman*, 102 Cal. App. 756 [283 Pac. 874].) The fact that said words were stricken is therefore wholly immaterial and the trial court properly awarded plaintiff interest on said note from maturity.

Defendant finally contends that the trial court erred in not reducing defendant's obligation on said notes by the sum of $2,025.33, which was the amount by which it was claimed that the consideration had failed. Defendant bases its claim of partial failure of consideration with respect to the notes here involved upon the agreement of 1934, which agreement, as above stated, related to the secured notes in the total sum of $60,000. Defendant apparently argues that, while plaintiff agreed, by the 1934 agreement, to transfer this account, known as the Bottali account, to defendant, no further instrument assigning said account was ever made by plaintiff and that defendant received no money from Bottali in payment of said account. But it does not appear that any instrument assign-

ing any account receivable was ever made or was ever contemplated by the parties or was ever requested by defendant. Nor does it appear that plaintiff guaranteed the payment of any of said accounts receivable. Furthermore, we have heretofore indicated that a new agreement was made about one year after the making of the 1934 agreement whereby plaintiff agreed to cancel the secured notes for $60,000 and to accept unsecured notes in the total sum of $20,500. There is nothing in the record to show that the new agreement contemplated payment of the last-mentioned notes in any manner other than by payment in cash according to their tenor or that the new agreement was of such nature that defendant could claim credits against the last-mentioned notes or partial failure of consideration thereof by reason of any provision of the agreement of 1934 or any alleged partial failure of consideration for the $60,000 notes. On the contrary, and with respect to this particular account, defendant insists that the uncontradicted evidence shows an ''oral agreement made between the parties about two months following the making of the agreement of May 18, 1934, under which oral modification, the Bottali account was not transferred to the defendant.'' Giving full effect to this testimony offered by defendant, it appears clear that when the new agreement for notes totalling $20,500 was made some months thereafter, such agreement was made in the light of the previous oral agreement above referred to and that defendant may not now claim that there was a partial failure of consideration in the sum of $2,025.33 with respect to said last-mentioned notes.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.