**HUGHES et al. v. SAMEDAN OIL CORPORATION et al.**

**No. 3573.**

Circuit Court of Appeals, Tenth Circuit.

March 10, 1948.

---

Clifford E. Hughes, of Los Angeles, Cal. (Fletcher A. Catron, of Santa Fe, N. M., on, the brief) for appellants.

J. O. Seth and Oliver Seth, both of Santa Fe, N. M., for appellees.

Before PHILLIPS, BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This suit involves the interpretation of the royalty provisions of an "Operating Agreement" on an oil and gas prospecting permit covering government owned lands in Lea County, New Mexico. The permit was issued to appellant, Sarah B. Hughes, in 1926 under authority of the Mineral Leasing Act of February 25, 1920. 41 Stat. 437, 30 U.S.C.A. § 181· et seq. The Operating Agreement entered into in 1927 between Hughes, as permittee, and one Clark, predecessor in interest of appellees,[1] provided inter alia that Clark as "Operator" should drill and develop the land embraced in the permit.

Thereafter, in pursuance of the Operating Agreement, appellee,· Samedan Oil Corporation, drilled and completed a producing well on the said lands, and in accordance with the terms of the prospecting permit,· the Secretary of the Interior issued to Hughes and the Firm Royalties, Inc. (to which Hughes had previously assigned 13/15ths of her interest), two oil and gas leases. The first lease, designated as Lease A, covering one-fourth of the lands, provided for a 5 per cent royalty to the United States. The other lease, designated as Lease B, covering the remaining three-fourths of the land embraced in the permit, provided for a royalty to the United States of from 12½ to 33⅓ per cent, depending upon the amount of production.

When, in 1945, Samedan drilled and completed a producing well on Lease B, a dispute arose between appellants, as owners of the leases, and Samedan, as "Operator", concerning the overriding royalty payable to the appellants under the provisions of Paragraph 7 of the Operating Agreement, which in material part provided that: "* * * The operator, * * * agrees to pay to the permittee in cash the value at the field market price at the time of production of 7½ per cent of all the crude oil produced, saved and marketed from any of the lands hereby granted to the operator and 7½ per cent of all the gas produced, saved and marketed from any of the lands hereby granted to the operator where the Government royalty under the terms of the Government leases relating to said land shall not exceed five per cent. * * *" Samedan brought this suit for a declaration of its rights under the Agreement, contending that under the foregoing terms of Paragraph 7, appellants were not entitled to any royalty on the oil or gas produced from Lease B, because under the terms of the lease, the royalty provided to be paid thereon to the Government was in excess of five per cent. The appellants answered, con-

---

540; Maytag v. Cummins, 8 Cir., 260 F. 74, 82, 83; Pierce v. United States, 6 Cir., 86 F.2d 949, 952, 953; Robinson v. United States, 8 Cir., 32 F.2d 505, 508; Beck v. Wings Field, Inc., 3 Cir., 122 F.2d 114, 117; Waldron v. Waldron, 156 U.S. 361, 383, 15 S.Ct. 383, 39 L. Ed. 453; People v. Levan, 295 N.Y. 26, 34–36, 64 N.E.2d 341, 345; People v. Fielding, 158 N.Y. 542, 53 N.E. 497, 46 L.R.A. 641, 70 Am.St.Rep. 495; People v. Ah Len, 92 Cal. 282, 28 P. 286, 27 Am.St.Rep. 103; Lickliter v. Commonwealth, 249 Ky. 206, 60 S.W.2d 355, 357; Cassemus v. State, 16 Ala.App. 61, 75 So. 267, 268; People v. White, 365 Ill. 499, 6 N.E.2d 1015, 1021. See also dissenting opinion in United States v. Antonelli Fireworks Co., 2 Cir., 155 F. 2d 631 at pages 655, 656.

[1] By mesne conveyances, Barnes acquired a five per cent working interest in the Operating Agreement. As such owner, he stands on the same footing as Samedan Oil Corporation, and upon motion, has adopted the brief and argument of Samedan Oil Corporation.

tending that under the express provisions of Paragraph 7 of the Operating Agreement, Samedan became obligated to pay appellants 7½ per cent overriding royalty on all oil produced from Lease B, regardless of the amount of royalty payable to the United States. Jurisdiction is based upon diversity of citizenship and requisite amount in controversy, both of which are shown to exist.

The trial court, interpreting Paragraph 7 by its own terms, and in connection with deleted Paragraph 8 of the printed form of the Operating Agreement, held that the appellants were not entitled to any royalty on oil or gas produced from any of the lands embraced in Lease B.

Invoking the so-called last antecedent rule, sometimes applied in the construction of ambiguous statutes and written instruments, appellants argue that the restrictive clause in Paragraph 7, "where the Government royalty under the terms of the Government leases relating to said land shall not exceed five per cent", modifies only the immediately preceding antecedent "gas", and not the remote antecedent "oil", and as thus construed, the restrictive clause relates only to gas, leaving the 7½ per cent applicable to all oil produced from lands embraced in the prospecting permit, including Lease B.

It is a rule of grammatical construction, applicable to ambiguous instruments, that a restrictive word, phrase or clause ordinarily applies to words or phrases immediately antecedent, and are not to be construed as extending to or including others more remote, unless the contrary intention appears. Goldsworthy's Estate, 45 N.M. 406, 115 P.2d 627, 148 A.L.R. 722; American Ins. Co. v. Bean, 232 Ky. 111, 22 S.W.2d 426; Perry v. J. L. Mott Iron Works Co., 207 Mass. 501, 93 N.E. 798; Wussow v. State, 222 Wisc. 118, 267 N.W. 56. It is said in that connection that no comma must be placed between restrictive clauses and that which they restrict; that a restrictive clause must be set off by a comma only when it refers to several antecedents which are themselves separated by a comma. Tidal Oil Co. v. Roelfs, 77 Okl. 183, 187 P. 486; St. Louis S. F. Ry. v. Bengal Lbr. Co., 145 Okl. 124, 292 P. 52.

But neither the rules of grammatical construction, nor any other rule, should be indulged to confuse what is otherwise manifestly plain. Courts will not resort to grammatical niceties or the technicalities of punctuation in the interpretation and construction of an instrument, unless they may be utilized to make plain that which is otherwise obscure. Perry v. J. L. Mott Iron Works Co., supra; Tidal Oil Co. v. Roelfs, supra; Weingart v. Delgado, 204 La. 752, 16 So.2d 254; Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W. 2d 800, 127 A.L.R. 1217. We are primarily interested in giving effect to the intention of the parties, and not to the technical verbiage used to express it. But even so, appellants are not aided here by the application of the technical rule they invoke, for in the contract, neither the antecedents nor the restrictive clause are set off by commas. Cf. Tidal Oil Co. v. Roelfs, supra.

The Operating Agreement was a printed form in which the blanks had been filled in. Paragraph 8 of the printed form, immediately following the critical language in Paragraph 7, had been stricken, but it was readable and provided as follows: "In all cases where the Government royalty on production from said lands or any portion thereof shall exceed five per cent, then the royalty of the permittee herein shall be the value of ...... per cent of the net proceeds of the sale of crude oil and ...... per cent of the net proceeds of the gas after deducting all royalties payable in kind or in cash to the United States of America, or any predecessor in interest of the permittee herein, and all expenses of operations."

When the language in Paragraph 7 is read in the light of Paragraph 8, and in connection with the fact that it was deliberately striken by the parties, it becomes manifestly plain that the parties intended that no overriding royalty was payable to the appellants from lands where the Government royalty was in excess of 5 per cent. Otherwise, the parties would have so provided by merely filling in the blanks of Paragraph 8.

But the appellants complain that since Paragraph 8 had been stricken when the contract was signed, and was therefore no part of it, neither the trial court nor this

874

court can resort to it in the construction of the contract between the parties. We think that quite apart from any reference to Paragraph 8, the language of Paragraph 7 leaves no doubt of the intention of the parties to restrict the royalty payable to appellants to the leases on which the Government royalty did not exceed five per cent. Nevertheless, if it can be said that the intention of the parties is not clear from the language of their contract, we think it quite permissible to refer to stricken Paragraph 8 for guidance in resolving the doubt. Curtis v. M. L. Virden Lbr. Co., 159 Miss. 454, 132 So. 341; Remillard Brick Co. v. Remillard-Dandini Co., 51 Cal.App.2d 744, 125 P. 2d 548; Rowe v. Chesapeaks Mineral Co., D.C., 61 F.Supp. 773, affirmed 6 Cir., 156 F. 2d 752; 17 C.J.S., Contracts, § 315.

When judged by either rule or canon of construction, we think the contract is plain, and the judgment is affirmed.