**ST. LAWRENCE EXPLOSIVES CORPORATION,**
Petitioner,

v.

**WORTHY BROTHERS PIPELINE CORPORATION, Respondent.**

No. 95–CV–1683.

United States District Court,
N.D. New York.

Feb. 26, 1996.

(D.Mass.1951).

Mackenzie, Smith Law Firm, Syracuse, NY (Carter H. Strickland, of counsel), for petitioner.

Smith, Sovik Law Firm, Syracuse, NY (James A. O'Shea, Kevin E. Hulslander, of counsel), for respondent.

**MEMORANDUM–DECISION and ORDER**

McAVOY, Chief Judge.

## I. BACKGROUND

Petitioner **St. Lawrence Explosives Corporation ("St. Lawrence")**, petitions the Court to confirm and enter judgment upon an award granted by an arbitrator in favor of St. Lawrence and against **respondent Worthy Brothers Pipeline Corporation ("Worthy Brothers")** pursuant to a construction subcontract entered into by the parties. Originally filed by petitioner in New York State Supreme Court, Jefferson County, the case was removed by respondent to this Court based on allegations of both diversity and federal question jurisdiction. The primary issue before the Court is whether the arbitration provided for in the subcontract should be considered binding or nonbinding upon the parties.

The subcontract, "AIA Document A401" is entitled "Standard Form of Agreement Between Contractor and Subcontractor" and references a project in which petitioner, the subcontractor, agreed to excavate a 15–mile trench necessary for construction of a natural gas pipeline. The relevant clauses of the subcontract read as follows:

### *ARTICLE 6*
### ARBITRATION

6.1   Any controversy or claim between the Contractor and the Subcontractor arising out of or related to this Subcontract, or the breach thereof, shall be settled by arbitration, ~~which shall be conducted in the same manner and under the same procedure as provided in the Prime Contract with respect to claims between the Owner and the Contractor, except that a decision by the Architect shall not be a condition precedent to arbitration.~~ If the Prime Contract does not provide for arbitration or fails to specify the manner and procedure for arbitration, it shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association [ ("AAA Rules") ] currently in effect unless the parties mutually agree otherwise.

~~6.4   The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.~~

. . . .

(Sherer Aff. Ex. A at 5.)

As an initial matter, the parties have disagreed in regard to whether state or federal law applies to the subcontract, although petitioner seems to concede in its Reply Memorandum that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, is controlling. In regard to the subcontract itself, petitioner essentially argues that because the subcontract refers to the AAA Rules, it reveals an intent by the parties to have their arbitration governed in all regards by the AAA Rules. The AAA Rules provide for binding arbitration,[1] and as a result, the arbitration here should be binding. Respondent counters that, by striking out Section 6.4, the parties

clearly intended that the arbitration be nonbinding, the AAA Rules notwithstanding.

## II. DISCUSSION

### A. SUBJECT–MATTER JURISDICTION

To the extent that petitioner does not concede that the Court's review of this subcontract is governed by the FAA, the Court holds that it is so governed. The FAA "creates a national substantive law encompassing all questions of interpretation and construction of arbitration agreements, . . . if the [Act] is applicable." *Varley v. Tarrytown Assocs, Inc.*, 477 F.2d 208, 209 (2d Cir.1973). Furthermore, the FAA is applica-

---

1.  Rule 47(c) of the AAA Rules dictates that "[p]arties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." (*See* Pet.'s Mem.Supp.Confirm. At 5.)

ble "if the contract evidences a transaction involving interstate or foreign commerce," *Id.*, which is defined by the Act as "commerce among the several states or with foreign nations." 9 U.S.C. § 1. This definition has been applied very loosely, so that only the slightest nexus between the contract and interstate commerce is required. Here, although the subcontract contemplated construction of a gas pipeline within New York, the parties were residents of different states, materials and equipment used on the project were from out-of-state, and the local pipeline was intended to connect into an international pipeline. Such factors are enough to bring the subcontract within the purview of the FAA. *See Sears Roebuck & Co. v. Glenwal Co.*, 325 F.Supp. 86, 89–90 (S.D.N.Y.1970), *aff'd*, 442 F.2d 1350 (2d Cir.1971).

### B. NATURE OF THE ARBITRATION

■ Under the FAA, numerous courts have held that arbitration is binding where, as here, "the rules under which the arbitration is conducted call for binding arbitration." *McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 983 (5th Cir.1995); *see, e.g., I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 426 (2d Cir.1974) (holding that agreement to be bound by arbitration and consent to judgment could be inferred by reference to rules that provide for binding arbitration); *Varley*, 477 F.2d at 210 (conceding that agreement to binding arbitration could be expressed by incorporating AAA rules that provided for such binding arbitration); *Rainwater v. National Home Ins. Co.*, 944 F.2d 190, 192 (4th Cir.1991) (holding that arbitration in accordance with the AAA Rules is binding arbitration). Consequently, where an arbitration clause refers to AAA Rules a presumption arises that such arbitration was intended to be binding. Yet if the parties "expressly agree otherwise," resort to AAA arbitration should not be deemed binding or subject to entry of judgment. *McKee*, 45 F.3d at 983; *Rainwater*, 944 F.2d at 194.

Petitioner essentially concedes that the *McKee* standard is controlling, (Resp.'s Reply Mem.Supp.Confirm. at 2), but denies that the parties have expressly agreed on nonbinding arbitration, if at all. The only appar-

ent evidence that the parties did so agree is their act of crossing out Section 6.4, thereby implying that their arbitration be nonbinding. Petitioner counters, however, that matter stricken from a form contract "constitutes extrinsic evidence that may be referred to for guidance in construing a contract *only* when the intent of the parties is not clear from the language used in the agreement, and not to create an ambiguity where none otherwise existed." (*Id.* At 4–5 (emphasis added).) In other words, the Court initially should ignore Section 6.4—because the section has been "redacted." With Section 6.4 out of the picture, the reference to the AAA Rules in Section 6.1 stands alone and requires the conclusion that the arbitration was binding under cases like *I/S Stavborg*, 500 F.2d at 426, and *Varley*, 477 F.2d at 210. Therefore, no ambiguity exists in the subcontract and the Court need not and *cannot* consider the stricken Section 6.4.

■ Petitioner's argument makes complete sense, at least from a legal standpoint. It is true that the court may not consider extrinsic evidence in a contract case unless the contract is somehow ambiguous. *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir.1993). If the parties had completely erased or cut Section 6.4 from the subcontract, its contents clearly would not be part of the agreement and would represent extrinsic evidence. Here, the stricken language was left on the same paper as the subcontract and was left legible, but was crossed out. There are many ways of obliterating words on paper, and crossing them out has always been one way. Facts such as these are rare, but in *Hughes v. Samedan Oil Corp.*, 166 F.2d 871 (10th Cir. 1948), the Tenth Circuit essentially held that language that was merely crossed out could in fact constitute extrinsic evidence.

■ Addressing two royalty provisions of an "Operating Agreement" on an oil and gas prospecting permit, the *Hughes* court found that

> apart from any reference to [stricken but legible] Paragraph 8, the language of Paragraph 7 leaves no doubt of the intention of the parties .... Nevertheless, if it can be said that the intention of the parties is not

clear from [Paragraph 7], we think it quite permissible to refer to stricken Paragraph 8 for guidance in resolving the doubt. *Hughes,* 166 F.2d at 874. From petitioner's perspective in this case, and borrowing language from *Hughes,* "apart from any reference to [stricken but legible Section 6.4], the language of [Section 6.1] leaves no doubt of the intention of the parties." Continuing with this line of reasoning, petitioner consequently contends that "it [is *not* ] permissible to refer to stricken [Section 6.4] for guidance" because there is no doubt about Section 6.1. The sometimes vagarious intricacies of contract law constrain the Court to agree.

Respondent counters that even if Section 6.4 is not considered, Section 6.1 is in fact ambiguous because the section does not refer to the AAA Rules in the same unqualified manner as the contracts in cases like *I/S Stavborg, Varley,* and *Rainwater.* In respondent's view, the fact that Section 6.1 says that the "manner and procedure" of the arbitration shall be "conducted in accordance" with the AAA Rules distinguishes it from the relevant caselaw, where the contracts directed that arbitration shall be "pursuant" to the AAA Rules or "governed" by them. Respondent believes that Section 6.1 places limits on the applicability of the AAA Rules and precludes the inference that the parties intended the arbitration to be binding.

The Court must approach this case, however, in the light of the "liberal federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Under that standard and the standards enunciated in the lower court cases, which do not draw fine distinctions between *types* of references to the AAA Rules, Section 6.1 of the subcontract contemplated arbitration that would be binding on the parties. The Court simply will not split hairs as respondent urges when doing so has not been required before.[2] In *Varley,* a contract that

provided for "settlement of controversies by arbitration pursuant to the [AAA Rules]" was held "sufficient to incorporate the rules into the agreement." *Varley,* 477 F.2d at 210. To expect the Court to find, for example, that "conducted in accordance with" has a significantly different meaning than "pursuant to" is to ask too much, especially when arbitration is a favored medium under federal law.

## C. MOTION FOR VACATUR OF THE AWARD

Respondent's final argument is that even if the Court holds that the parties intended the arbitration to be binding, the award should be vacated "on the grounds that the arbitrator's decision in favor of St. Lawrence was biased, arbitrary and capricious, and affected by manifest disregard of the law." (Resp.'s Mem.Opp.Confirm. At 22.) In respondent's view, the arbitrator found in favor of petitioner "based on a complete misapplication of the law of contracts," (*Id.* at 23), and also "ignored and excluded relevant evidence sought to be admitted by Worthy, curtailed Worthy's cross-examination of St. Lawrence's prime witnesses, made inappropriate comments regarding the merits of the controversy, [and] had *ex parte* communications with representatives of St. Lawrence." (*Id.* At 24.)

Respondent founds its motion for vacatur on 9 U.S.C. § 10, which reads, in relevant part:

In any of the following cases the United States court ∴ . . may make an order vacating the award upon the application of any party to the arbitration—

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

---

**2.** If the Court were to engage in the type of hair-splitting urged by respondent, the Court might agree with petitioner that the clause "[arbitration] shall be conducted in accordance with the

[AAA Rules]" stands on its own and is not connected to the "manner and procedure" language from which it is separated by a comma.

9 U.S.C. § 10(a). Respondent also interposes the non-statutory ground of "manifest disregard of the law," which courts have recognized as an additional basis for vacating arbitration awards. *See, e.g., Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 892–93 (2d Cir. 1985).

Absent one of these grounds for vacatur, a district court has no choice but to summarily confirm the arbitrator's final award. *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987). Moreover, the court's authority to vacate an award under Section 10 is read "very narrowly", *Blue Tee Corp. v. Koehring Co.,* 754 F.Supp. 26, 31 (S.D.N.Y. 1990), and "the showing required to avoid summary confirmation is high." *Id.; see National Bulk Carriers, Inc. v. Princess Management Co.,* 597 F.2d 819, 825 (2d Cir.1979) ("only 'clear evidence of impropriety' justifies denial of summary confirmation") (quoting *Andros Compania Maritima S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 702 (2d Cir.1978). Finally, remand for further arbitration is appropriate "in only certain limited circumstances such as when an award is incomplete or ambiguous." *Ottley,* 819 F.2d at 376.

Respondent, and certainly the Court, is in an unfortunate position in reviewing the arbitrator's decision because no transcripts have been proffered that cover any part of the process. All the Court has to rely on are the post-hearing briefs of the parties, the conflicting affidavits of their representatives, and the one-and-a-half page award by the arbitrator that does not explain his decisions in the slightest. Based on this evidence, which is to a large extent respondent's word against petitioner's, respondent simply has not demonstrated via sufficiently convincing evidence that the arbitrator made improper comments, had *ex parte* communications, or displayed other bias. *Some* evidence seems to exist in the record, but not as much as courts previously have required.

With such a limited record, the Court also is unable to find that the arbitrator ignored relevant evidence or improperly curtailed respondent's cross-examination of petitioner's witnesses. For example, counsel for respondent claims that his cross-examination of Jul-

ie Pecori, President of St. Lawrence, was significant on the issue of damages because Ms. Pecori contradicted other officers of St. Lawrence in her direct testimony. Despite the alleged importance of such evidence, the arbitrator interrupted the cross-examination and asked respondent's counsel to reconsider whether such questioning was appropriate. The arbitrator allegedly continued that he "had already heard all he needed to hear about what 'really happened' on the job from other witnesses." (Gumbiner Aff. ¶ 22.) Such allegations could appear to raise implications of impropriety.

As the Court has stated, however, it has seen no transcript of the proceedings. Lacking such an account, the Court must once again weigh respondent's allegations against those of petitioner, which claims that

[respondent] was not cross-examining Pecori on damages, but rather on what had transpired at the project site. Pecori had already testified to the effect that she was not on the site and was not familiar with what transpired on a day to day basis. Furthermore, by this point in the arbitration, St. Lawrence had sponsored witnesses Pruss and Curtis, both of whom had been on the site and had been thoroughly cross-examined with respect thereto. Contrary to [respondent's] contention, at no time did Arbitrator Sheridan restrict [the] cross-examination of Pecori on damages or, in fact, on any topic.

(Strickland Aff. ¶ 20.) Based on this conflicting evidence and the stringent standards of cases like *Ottley* and *National Bulk Carriers,* the Court cannot in good conscience vacate the arbitration award.

Finally, respondent argues that the arbitrator demonstrated a "manifest disregard for the law" because he ruled in favor of petitioner "despite the fact that the evidence submitted by Worthy with respect to delay and added costs due to St. Lawrence's incompetence was largely uncontroverted." (Resp.'s Mem.Opp.Confirm. at 23.) In respondent's view, the only way the arbitrator could have done this was if he relied on a "modification agreement" between respondent and Niagara Mohawk Power Corporation ("NiMo") that increased the final price of

the prime contract. Respondent contends that the agreement "was absolutely irrelevant to the issue of whether St. Lawrence, who was not a party to the modification agreement, had breached its subcontract with Worthy." (*Id.* at 23.)

 In order for vacatur of an arbitration award to be possible based on manifest disregard for the law, "the governing law alleged to have been ignored must be well-defined, explicit, and clearly applicable." *W.K. Webster & Co. v. American President Lines, Ltd.,* 32 F.3d 665, 669 (2d Cir.1994). The error must have been "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator," and a court must not disturb an award over a mere arguable difference of opinion regarding the law. *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986). Furthermore, the term "disregard" intimates that the arbitrator recognizes the existence of a clearly governing legal principle but decides to disregard it. *Id.* To adopt a less strict standard of judicial review would be to undermine federal courts' well-established deference to arbitration as a method of settling disputes. *Id.*

 If a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed, *Sobel v. Hertz, Warner, & Co.,* 469 F.2d 1211, 1216 (2d Cir.1972), and the Court finds that a ground for the arbitrator's decision can in fact be inferred here. While respondent generally contends that (1) it is undisputed that petitioner failed to meet the contract schedule because it was inexperienced and disorganized, and (2) the modification agreement was irrelevant because it arose not directly out of petitioner's delay but out of NiMo's desire to hold down cost overruns by converting the contract into a lump-sum agreement, petitioner counters that (1) the delays were the result of acts or omissions by respondent, and (2) the modification agreement was very important because all the issues being disputed in the arbitration were negotiated between respondent and NiMo and incorporated into the modification.

Even if petitioner's positions were incorrect, the Court does not believe that the arbitrator's error in believing them would be "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch,* 808 F.2d at 933. Petitioner supported its arguments with legal reasoning that, while certainly not perfect, arguably was as correct and coherent as that of respondent. (*See generally* Gumbiner Aff.Ex. B.) Moreover, respondent has failed to point out exactly which "well-defined, explicit, and clearly applicable" governing law has been contravened by the arbitrator and has also failed to establish that the arbitrator recognized the existence of such law but decided to disregard it. *Merrill Lynch,* 808 F.2d at 933.

## III. CONCLUSION

Arbitration is a favored medium in federal courts for the resolution of disputes, and this status is reflected in the caselaw. For the foregoing reasons, petitioner's motion to have the Court confirm and enter judgment upon the award granted by the arbitrator in petitioner's favor and against respondent is hereby GRANTED and judgment is ENTERED in accordance therewith.

**IT IS SO ORDERED.**