GATEWAY FRONTIER PROPERTIES, INC., Plaintiff/Appellant,

v.

SELNER, GLASER, KOMEN, BERGER AND GALGANSKI, P.C., Norman Selner, A. Fuller Glaser, Leonard Komen, Corey Berger, and Thomas Galganski, Defendants/Respondents.

No. 72830.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 16, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1998.

Application to Transfer Denied
Sept. 22, 1998.

Joseph J. Trad, Lewis, Rice & Fingersh, L.C., St. Louis, for Appellant.

David S. Slavkin, James F. Bennett, Bryan Cave, LLP, St. Louis, for Respondents.

SIMON, Judge.

Gateway Frontier Properties, Inc., (Gateway) appeals from a judgment in favor of Norman Selner, A. Fuller Glaser, Leonard Komen, Corey S. Berger and Thomas R. Galganski (guarantors) on the guarantors' personal guaranty of a lease of guarantors' law firm, Selner, Glaser, Komen, Berger and Galganski, P.C. (law firm) eventually assigned to Gateway by Bonhomme Place Associates, Inc., the successor in interest to the original landlord, Turco–BDA.

On appeal, Gateway contends that the trial court erred in concluding that: (1) the guaranty was special, i.e., running only to the original landlord, rather than general, i.e., running also to landlord's successors; (2) the changes in the ownership of Bonhomme Place relieved the guarantors of liability on the guaranty because only a material change of the obligations guaranteed without the guarantors' consent will discharge the guarantors; the change in ownership of the buildings was not a material change of the obligation of the guarantors; (3) Gateway's failure to give written notice to the guarantors of lease amendment No.2 relieved the guarantors' liability, because where there is no contractual requirement for written notice, actual knowledge of a change and acceptance of the benefits, as was the case here, is sufficient notice to a guarantor; and (4) that Gateway's failure to prove that the guaranty had been assigned to Gateway relieved the guarantors from liability, because when a guaranty and the underlying obligation are executed together as part of one integrated transaction, they are considered to be one document such that the transfer of the obligation transfers the guaranty. We reverse and remand for further proceedings consistent with this opinion.

■ Reviewing a court tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

The record reveals that on or about May 10, 1990 a lease was entered into for 11,365 square feet located on the second floor of Bonhomme Place ( the building) in Clayton, Missouri between the original landlord, Turco–BDA and tenant law firm for a term of six years and six months from December 1, 1990 to May 1, 1997. The lease agreement, signed on behalf of the law firm by Galganski, the law firm's managing officer, was a form lease originally provided by the landlord, but fully negotiated by the parties, with terms and provisions deleted and added. The guarantors, principals of the law firm, individually signed the guaranty, personally guaranteeing the law firm's performance of the lease, on

page fourteen of the lease document. The guarantee provides:

### Guaranty

"The undersigned [guarantors] having a financial interest in the Tenant named in the forgoing lease, hereby unconditionally and irrevocably (and jointly and severally if there be more than one) guaranties [sic] the prompt and complete performance by Tenant of all of the obligations and covenants of Tenant as set forth in the Lease. This guarantee shall remain in full force until all of the obligations of Tenant have been fully performed or otherwise discharged. No waiver of default or extension of time by landlord shall effect the liability of the undersigned. Landlord shall not be required to exhaust its remedies under the Lease before proceeding under this guaranty. ~~This guaranty shall be binding on the successors, assigns, heirs and personal representatives of the undersigned and shall inure to the benefit of all successors and assigns of the landlord.%)~~ ~~The rights of the landlord under this guaranty shall not be subject to the exercise by Landlord of any remedy which it may have against Tenant. The lease may be modified without notice to the undersigned and without release of the undersigned from its liability hereunder and the undersigned waives notice of acceptance or of non-performance or non-payment by the Tenant.,~~ [sic] *unless the modification shall increase the liability of the undersigned, in which case notice shall be required.*" (Italics added; the italicized portion was typewritten.)

The lease also provides, in paragraph 28, that Turco–BDA, landlord, has the right to transfer or to assign its interest in the building. Paragraph 30 contains an integration clause, providing that the lease and its exhibits constitute an entire agreement. Exhibit E, entitled "Special Agreements" provides the schedule of rent and gives the law firm an option to extend the lease for three years and to lease an additional 3000 square feet, designated as the "Expansion Area." Paragraph 26, entitled notices, provides that all notices which one party is required to give

the other shall be in writing and mailed to the persons and addresses provided therein.

Subsequently, Bonhomme Place Associates, Inc. acquired title to the building from Turco–BDA Associates, by accepting a deed in lieu of foreclosure. On February 22, 1993, the law firm by and through Galganski, its managing officer and one of the guarantors, executed Lease Amendment No. 2. The Amendment, consistent with Exhibit E of the original lease, exercised the law firm's option to extend the term of the lease until August 31, 2000 and to increase the amount of leased space by 3,129 square feet.

At trial, Galganski testified that he was authorized by the other principals of the law firm, the guarantors, to sign Lease Amendment No. 2 and that the terms contained therein were discussed by the guarantors. Mr. Corey Berger, another principal and guarantor, testified that David Randolph, an agent, negotiated the terms of the lease expansion for the law firm. Berger also testified that the other guarantors were notified of the extension of the lease and expansion of the lease premises by Galganski.

On July 21, 1995, Galganski, on behalf of the law firm, executed a Lease Estoppel Certificate, which identified Bonhomme Place Associates, Inc. as the present landlord and acknowledged that the lease was still in effect. Bonhomme Place Associates, Inc. assigned the lease to Gateway on July 25, 1995, accompanying a sale of the property. Galganski acknowledged receiving a letter dated July 25, 1995, which informed him that Gateway had become the owner of the property and that the law firm should begin paying rent to Gateway.

Galganski testified that the law firm ceased operating as of August 31, 1996, but remained in control of the premises until February 26, 1997, when it relinquished them pursuant to a consent judgment. The Board of Directors of the law firm decided not to pay rent beginning October 1996. A representative from the Sansone Group, which managed the property, testified that the balance due for back rent at the time of the trial was $229, 060.10.

At the close of Gateway's evidence, the guarantors made an oral motion to dismiss (termed a motion for directed verdict), claiming that Gateway had failed to show that the guaranty was assigned to Gateway and further that the guaranty was a special guaranty and was thus unassignable. Gateway responded that the guaranty was a general, not special and that where the lease and guaranty were executed together, supported by the same consideration, they become one document. The lease was assigned and the guaranty carried along with it. The court denied the guarantors motion, and they went forward with their case: introducing evidence of the language stricken from the guaranty which originally provided that the guaranty would be binding on the successors, assigns, heirs and personal representatives of the guarantors and would inure to the benefit of the successors and assigns of the landlord; arguing that the guaranty was special; and contending that the guarantors did not receive notice of Lease Amendment No. 2.

In its Findings of Fact and Conclusions of Law, the trial court determined, and the parties agreed that the guaranty was unambiguous. The trial court also concluded that the parties intended to create a special, rather than a general guaranty. In reaching this conclusion, it relied on the language stricken from the guaranty. It determined that striking the language from the guaranty expressed the contracting parties' intent that the guaranty was not assignable and thus special under Missouri law. Based on these conclusions, the trial court ruled that when the building was transferred from Turco–BDA to Bonhomme Place Associates, Inc. and from Bonhomme Place Associates to Gateway, the guarantors were discharged of liability under the guaranty.

In the alternative, the trial court held that even if the guaranty was assignable, Gateway failed to introduce evidence reflecting that either Turco–BDA or Bonhomme Place Associates attempted to assign the guaranty to their successors in interest. Accordingly, the trial court held that there was no showing of Gateway's entitlement under the guaranty or of Gateway's right to pursue the guarantors.

Finally, it also determined, in the alternative, that the guarantors were entitled to judgment because they did not receive notice of Lease Amendment No. 2. Under the terms of the guaranty, the guarantors were entitled to notice if their liability under the guaranty were increased by a modification of the lease. The court noted that Lease Amendment No. 2 increased the liability of the guarantors; therefore, the guarantors were entitled to, but did not receive, notice of the amendment and were so discharged.

Based upon these Findings of Fact and Conclusions of Law, the trial court entered a judgment in favor of Gateway and against law firm in the amount of $229,060.10, but refused to hold the guarantors liable to Gateway on the guaranty.

In its first point on appeal, Gateway contends that the trial court erred in concluding that the guaranty was special rather than general because: (a) a broad guaranty of all of another's obligations of an instrument which is not limited to a particular person is a general guaranty; (b) a lease and guaranty executed simultaneously should be read as a whole, and meaning should be given to all of their provisions; and in the construction of an unambiguous, integrated contract, the court may consider only the words appearing in the document and not the words stricken. Gateway argues that the guaranty here, which is not limited to a particular person, and "unconditionally and irrevocably" guarantees "prompt and complete" performance of all of the law firm's obligations until fully performed, is consistent with a general guaranty. Gateway also contends that the trial court ignored language in the lease, which was executed simultaneously with the guaranty, which specifically contemplates the assignment of the landlord's interest and requires the law firm to continue to perform in the event of assignment. Finally, Gateway argues that the court erred in considering the words stricken from the guaranty and construing those words to indicate that an assignment would not have been acceptable to the guarantors and the time the language was stricken.

We recognize two types of guarantees, general and specific. A guaranty is

general if it is addressed to persons generally and is assignable under the principles of contract law. *In Re Modern Textile, Inc.,* 900 F.2d 1184, 1189 (8th Cir.1990), *see also Little v. Remley,* 101 S.W.2d 505, 506–507 (Mo.App.1937). "A special guaranty . . . is one which is addressed to a particular person who alone can take advantage of it, and to whom alone the guarantor can be held responsible; it usually, but not necessarily, contemplates a trust or reposes a confidence in the person to whom it is addressed. *Modern Textile* 900 F.2d. at 1189 (quoting 38 C.J.S. *Guaranty* Section 7). A special guaranty may not be assigned to another without the guarantor's consent. *Id.*

■ *Little* provides an example of a general guaranty. *Little* 101 S.W.2d at 506–507 (Mo.App.1937). There, the court found that the language in the guaranty providing that "I, the undersigned, for value received, hereby absolutely and unconditionally guarantee the holder of the note the prompt and punctual payment thereof when due, and the performance and observance of the terms and conditions of the deed of trust securing the same" constituted a general guaranty. In contrast, a guaranty to one person or one corporation is consistent with a special guaranty and cannot be transferred to another so as to give the benefits of said guaranty to the assignee of the original party for the performance of the obligations of the principle debtor that are directly contracted for with such assignee. *Kelly–Springfield Tire Co. v. Hamilton,* 230 Mo.App. 430, 91 S.W.2d 193, 195 (1936)

Here, the guaranty simply provided that the undersigned (guarantors) "unconditionally and irrevocably guaranties [sic] the prompt and complete performance by Tenant of all of the obligations and covenants as set forth in this lease." The language in this guaranty is broad, more like that held to be a general guaranty in *Little,* 101 S.W.2d at 506–507.

Gateway also contends that the court ignored language of the lease making it clear that the parties contemplated assignment of the landlord's interest. Paragraph 28 of the lease agreement provides that the landlord has the right to transfer its interest. Similarly, Exhibit G of the lease provides that the agreement "shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns."

■ Reading the guaranty together with the lease, Gateway argues, further demonstrates that this is an assignable, general guaranty. The trial court looked at the guaranty in isolation, failing to read the guaranty together with the lease. When an agreement of parties is evidenced by several documents which refer to each other, are closely related, and constitute one complicated interdependent transaction, the intent of the parties and the meaning of those documents must be determined from the entire transaction and not only from isolated portions. *Central City Limited Partnership v. United Postal Savings Assn.,* 903 S.W.2d 179, 182–183 (Mo.App.1995). The trial court should have construed the guaranty together with the accompanying lease, not simply the guaranty in isolation.

■ Finally, Gateway argues, the trial court erred in considering the effect of the words that have been stricken from the guaranty, drawing a negative inference from the act of striking. The rules of construction applicable to a guaranty are the same as applied to other contracts. *Royal Banks of Missouri v. Fridkin,* 819 S.W.2d 359, 361–62 (Mo.banc 1991). In construing an integrated contract, a court may not resort to extrinsic evidence unless the contract is ambiguous. *Id.*

■ Whether or not language stricken from an unambiguous, integrated contract constitutes extrinsic evidence which may not be considered in its interpretation apparently has not been addressed in Missouri, as the parties have directed us to no Missouri authority, nor does our research reveal any. However, the majority of other jurisdictions considering the issue have held that stricken language is extrinsic and may not be resorted to in construing an integrated, unambiguous contract. *See, e.g., Kennon v. Shepard,* 236 Mass. 57, 127 N.E. 426, 427 (1920); *Remillard Brick Co. v. Remillard–Dandini Co.,* 51 Cal.App.2d 744, 125 P.2d 548, 552 (1941); *St. Lawrence Explosives Corp. v. Worthy*

*Bros. Pipeline Corp.*, 916 F.Supp. 187, 190 (N.D.N.Y.1996). The rationale underlying the rule is that the writing excised from the agreement, whether by way of striking, erasing, or simply transferring the agreement to a new piece of paper without the stricken language, is not part of the agreement between the parties. Here, the trial court and the parties agreed that the guaranty was not ambiguous, therefore the trial court erred in resorting to the stricken language.

■ Gateway contends, in its second point, that the trial court erred in concluding that the landlord's failure to give written notice to the guarantors of Lease Amendment No. 2 relieved the guarantors of liability on the guaranty. The guaranty provides that notice is required if a modification of the lease terms increases the liability of the guarantors. The trial court found that Lease Amendment No.2, which provides for an increase in the amount of space rented by law firm and a corresponding increase in rent, materially increased the obligations of the guarantors, entitling them to notice under the terms of the agreement. The trial court also found that no notice was given, and therefore concluded that the liability was discharged.

Paragraph 26 of the lease requires that notice be in writing and mailed to the party being noticed. Here, no formal written notice was mailed to the individual guarantors. However, the record reveals that the guarantors actually had knowledge of Lease Amendment No. 2. Galganski, the managing officer, testified that he was authorized by the guarantors to sign Lease Amendment No. 2 and that the terms contained therein were discussed by the guarantors. Berger, another principal and guarantor, testified that an agent of the law firm negotiated the terms of the lease expansion on behalf of the law firm. Berger also testified that the individual members of the firm, who were also guarantors, were made aware of the extension of the lease and expansion of the lease premises by Galganski. Even though the guarantors had a right, according to the lease, to receive a notice in writing, they had actual knowledge of the amendment and they were not harmed by Gateway's failure to complete the act of giving formal notice and cannot complain.

■ Although the parties have directed us to no Missouri cases involving this precise issue, we find support from other cases involving notice. For example, in cases involving notice required by statute, we have held that generally, one having actual notice is not prejudiced by and may not complain of the failure to receive statutory notice. *Macon–Atlanta State Bank v. Gall,* 666 S.W.2d 934, 940 (Mo.App.1984). Statutes that impose technical requirements for notice should not be strictly enforced where the party seeking enforcement had actual notice and cannot show prejudice as a result of failure to follow the technical requirements. *Id.* Similarly, we have held that notice to exercise a lease option is sufficient if it is actually received, despite failure to comply with the lease's specifications on the type and manner of notice. *M.D. and Associates, Inc., v. Sears Roebuck and Co.,* 749 S.W.2d 454, 456 (Mo. App.1988). The same type of reasoning applies here. The guarantors were aware of the modification of the lease and accepted its terms. Thus, literal compliance with the lease provision as to notice was not crucial in this situation.

■ Gateway contends, in its final point, that the trial court erred in concluding that its failure to prove that the guaranty was assigned to it relieved the guarantors from liability. Gateway argues that, where, as here, a guaranty and the underlying obligation are executed together as part of one integrated transaction, they are considered to be one document, such that the transfer on the obligation transfers the guaranty and no express assignment of the guaranty was required. Here, the guaranty and lease were executed at the same time; the guaranty appears on the last page of the lease. Although the guaranty remained a separate obligation, Gateway contends, it was part of the same transaction, such that the transfer of the lease operated to transfer the guaranty.

■ Although the parties have directed us to no Missouri cases with similar fact situations addressing this issue, the general

rule is that a transfer of the principal obligation is held to operate as an assignment of the guaranty. *See* 38 Am.Jur.2d *Guaranty* Section 36. This is so even though there is no specific reference to the guaranty in the assignment. *See Id.*

Here, the assignment between Bonhomme Associates and Gateway assigned to Gateway all of Bonhomme Associates' interest in the lease, including the guaranty, even though it was not specifically mentioned in the assignment contract. Therefore, the judgment must be reversed and remanded for further proceedings.

JUDGMENT REVERSED AND REMANDED.

ROBERT G. DOWD, Jr., P.J. and HOFF, J., concur.