**BLUE RIDGE BANK AND TRUST CO., Respondent,**

v.

**Rhonda TROSEN, et al.; Respondents**

**Randy and Nancy Hanson, Appellants.**

**No. WD 67024.**

Missouri Court of Appeals,
Western District.

May 9, 2007.

Mark J. Bredemeier, Lee's Summit, for Appellants.

Deron A. Anliker, Overland Park, KS, for Blue Ridge Bank.

P. John Brady, Kansas City, for Rhonda Trosen et al.

Matthew A. Culp, Kansas City, for Donald and Amy Allen.

Before VICTOR C. HOWARD, C.J., ROBERT G. ULRICH and THOMAS H. NEWTON, JJ.

ROBERT G. ULRICH, Judge.

Randy and Nancy Hanson appeal the judgment decreeing that they failed to timely exercise the preemptive right, granted to them by covenant, to purchase certain real property contiguous to their residence. They claim as two points on appeal that because they properly exercised their preemptive right to purchase the property, (1) the trial court erroneously declared or applied the law and (2) the court's judgment was against the weight of the evidence. The first point is granted, the judgment is reversed, and the cause is remanded for further proceedings.

## Factual Background

Lawfully recorded restrictive covenants govern all real property situated at Lake Lotawana, Jackson County, Missouri. The restrictions were first recorded in the 1940s and have been periodically extended, the last time being in 1987 for an additional twenty years. The Declaration of Restrictions (the Restrictions), *inter alia*, afford Lake Lotawana Association, Inc. (the Association)[1] and adjoining lot owners a preemptive right to purchase certain property as follows:

> No sale, contract to sell, or conveyance of the real estate herein described shall be made or consummated without first giving at least fifteen (15) days written notice to Grantor,[2] and to the owners of the two side adjoining lots, of the proposed sale price and terms thereof; and thereupon the Grantor and/or either of the side adjoining lot owners shall have the first and prior right, option, and privilege during said period of fifteen (15) days to buy said real estate at the same price and upon the same terms. Such written notice shall be personally served, if service can be made on the subdivision. If any person entitled to service cannot be found on the subdivision, notice may be mailed to such person at his last address known to the Grantor. Affidavit of the person making service shall be sufficient evidence thereof.

Donald L. Allen, Sr. purchased property identified as Lot W–2 Lakeshore, Lake Lotawana, Missouri 64086 (Lot W–2) in 1977. He died testate on October 12, 2004. At the time of his death, he was the sole trustee of the Donald L. Allen Revocable Trust Agreement dated February 16, 1990, as amended (the Trust). Upon his death, Blue Ridge Bank and Trust Co. (the Bank) was appointed as his successor trustee and is currently serving as such. Rhonda Tro-

---

1. The Association is the lake community's homeowners association.

2. The successor-in-interest to the "Grantor" identified in the Restrictions is the Association.

sen, Mark Trosen,[3] Donald Allen, Jr., and Amy Allen [4] (the Trust Beneficiaries) are among the beneficiaries of the Trust.

Ownership of Lot W–2 was vested in the Trust. The Trust instrument did not bequeath or devise Lot W–2 to any specific trust beneficiary. It directed the trustee to sell Lot W–2 and add the proceeds to the corpus of the Trust for the benefit of the Trust Beneficiaries. The Bank obtained a land appraisal for Lot W–2 on or about October 22, 2004. It planned to use the appraisal to assist in fulfilling its fiduciary duty to sell Lot W–2 for the highest value possible. The appraisal determined that the estimated market value of Lot W–2 was $135,000.

Randy and Nancy Hanson [5] own Lot W–1, a side adjoining lot to Lot W–2. On February 4, 2005, after receiving the land appraisal, the Hansons offered to purchase Lot W–2 for $135,000. The offer stated it would expire at noon on February 7, 2005. The Trust Beneficiaries made an offer to the Bank on February 7, 2005, to purchase Lot W–2 for $135,500. The offer stated it would expire at noon on February 8, 2005. Following this offer by the Trust Beneficiaries, a representative from the Bank telephoned the Hansons. The representative informed Mr. Hanson that the Trust Beneficiaries were offering to buy Lot W–2 for $135,500 and asked if they wished to bid against the Trust Beneficiaries. The Hansons declined to enter into a bidding contest and/or auction, and stated that they would not offer any additional money. The Bank accepted the Trust Beneficiaries' offer on February 7, 2005.

On February 8, 2005, the Trust beneficiaries sent a letter to the Bank instructing the Bank to send a letter to the Association and the residents of Lot W–1 and Lot W–3, the side adjoining lots to Lot W–2, informing them that they would not be sent a waiver for the sale of Lot W–2. The Trust Beneficiaries directed that the language of the letter to the Association and side lot owners should state, "Per the instructions of the Lake Lotawana Association a waiver will not be required for the sale of the property located at Lot W–2, Lake Lotawana, since the property will be sold to the beneficiaries of the estate." The letter sent by the Trust Beneficiaries to the Bank further stated, "You should *not* include the sales price of the property."

On February 9, 2005, the Bank and the Trust Beneficiaries entered into a Residential Real Estate Sale Contract (Sale Contract), whereby the Trust Beneficiaries agreed to purchase Lot W–2 from the Bank for the agreed upon purchase price of $135,500. The Sale Contract contained the requirement that "[t]o qualify, you must be a family member." The Bank and Trust Beneficiaries set a closing date of on or before March 1, 2005.

On February 15, 2005, after executing the Sale Contract, the Bank sent the Lake Lotawana Association, Inc.'s Notice of Sale Property Waiver (Notice of Sale) to the Hansons by certified mail. This indicated the Trust Beneficiaries' intent to close on and purchase Lot W–2. The Notice of Sale failed to set forth the sale price in the area designated for that disclosure. In the area designated "terms," it stated this was a "transfer to family member."

---

**3.** Rhonda Trosen is the adult daughter of Donald L. Allen, Sr., and Mark Trosen is her spouse.

**4.** Donald Allen, Jr. is the adult son of Donald L. Allen, Sr., and Amy Allen is his spouse.

**5.** Randy and Nancy Hanson are married to one another.

The Hansons sent a letter to the Bank on February 23, 2005, requesting that the Bank modify the closing date to reflect the required minimum fifteen day notice as stated in the Notice of Sale. In the letter, the Hansons also provided notice to the Bank that they were exercising their option to purchase Lot W–2 pursuant to their rights under the Notice of Sale as set forth pursuant to the Restrictions. The Hansons' letter stated that they had been informed that the purchase price was $135,500. It further stated, "Please confirm the selling price and the terms agreed to by the [Trust Beneficiaries]. We need that information to meet and comply with the terms of the notice." Neither the owner of Lot W–3, the other side lot adjoining Lot W–2, nor the Association notified the Bank of their intent to exercise their preemptive right, and the fifteen day period for exercising such rights expired.

On or about March 1, 2005, counsel for the Hansons sent a letter to the Bank and the Trust Beneficiaries demanding that the Bank "cease and desist from the sale, contract to sell or conveyance of [Lot W–2] in breach of violation of the Restrictions and the Hansons' right of first refusal." In response to this letter, the Trust Beneficiaries took the position that any requirements under the Notice of Sale and Restrictions that the owners of the two side adjoining lots to a parcel of property up for sale have a preemptive right is not applicable in that the transfer at issue was to a family member; that one of the conditions to closing in the contract provides that the sale must be to a family member; and that because the Hansons are not family members, they are, therefore, unable to buy Lot W–2 "upon the same terms," as required by the Restrictions.

Under the Sale Contract, the Trust Beneficiaries were to close on Lot W–2 on March 1, 2005; the closing date was ex- tended to March 7, 2005. The Bank did not sell Lot W–2 to the Trust Beneficiaries. The Bank did not honor the Hansons' offer to purchase Lot W–2. The ownership of Lot W–2 continues to be held in the name of the Trust, and the Bank remains the trustee of the Trust.

On March 4, 2005, the Bank filed a petition for interpleader and declaratory relief against the Trust Beneficiaries and the Hansons. The petition alleged the basic facts of this dispute, including the possible multiple exposure to liability to both parties. The petition noted the Bank's duty to sell Lot W–2 for the highest value possible and sought a judgment adjudicating the respective rights of these claimants to purchase Lot W–2. The Hansons answered, acknowledging the general basis for the interpleader action. They also asserted a counterclaim against the Bank and a cross-claim against the Trust Beneficiaries. The counterclaim sought declaratory relief and a decree of specific performance. The cross-claim sought a declaration of the Hansons' right to purchase Lot W–2. The Trust Beneficiaries answered, admitting the allegations supporting an interpleader claim. Their answer to the Hansons' cross-claim asserted, *inter alia*, that the Restrictions were void and unenforceable and had been waived.

A bench trial occurred on February 16, 2006. The trial court entered judgment against the Hansons' exercise of their preemptive right on May 2, 2006. The trial court held that the Hansons had failed to comply with the fifteen day notice requirement as set forth in the Restrictions in that they did not exercise their option until more than fifteen days after they received actual notice of the proposed sale. The court concluded the Hansons received actual notice of the sale in the February 7, 2005, telephone conversation with the Bank representative. The court

further found that, even if the Hansons exercised their right within the fifteen day period, they had previously waived their preemptive right, and the result would be the same. It determined that the Trust Beneficiaries had the right to conveyance of Lot W–2 as set out in the Sale Contract.

The Hansons' timely appeal followed.

### Standard of Review

Appellate review of a judge-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), and such judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht,* 25 S.W.3d 530, 533–34 (Mo. App. W.D.2000). A trial court's construction of a restrictive covenant is a question of law, and is reviewed *de novo. Id.* at 534.

Reviewing authority "defers to the trial court's factual findings, as the trial court is in a superior position to determine the credibility of witnesses." *Id.* "The evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences must be disregarded." *Id.*

The "weight of the evidence" refers to the evidence's weight in probative value as opposed to its quantity. *Id.* at 536. " 'The weight of evidence is not determined by mathematics, but on its effect in inducing belief.' " *Id.* (quoting *In re Marriage of Lewis,* 808 S.W.2d 919, 922 (Mo.App. S.D.1991)). "The power to set aside a decree or judgment because it is against the weight of the evidence should be exercised only with caution and with a firm belief that the decree or judgment is

wrong." *Id.* (**quote marks and citation omitted**). Reviewing authority defers to the trial court as the finder of fact in its determination as to whether there is substantial evidence to support the judgment and whether that judgment is against the weight of the evidence. *Id.*

Reviewing authority "is primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Business Men's Assurance Co. of Am. v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999). "Thus, the judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Id.*

### Analysis

#### Point I

In their first point, the Hansons claim the trial court erroneously declared or applied the law because they properly exercised their preemptive right under the Restrictions.

The Trust Beneficiaries made an offer of $135,500 to purchase Lot W–2 from the Bank on February 7, 2005. Following this offer by the Trust Beneficiaries, a representative from the Bank telephoned the Hansons. The representative informed Mr. Hanson that the Trust Beneficiaries were offering to buy Lot W–2 for $135,500 and asked if they wished to bid against the Trust Beneficiaries. The Hansons declined to enter into a bidding contest and/or auction, and stated that they would not offer any additional money. The Bank accepted the Trust Beneficiaries' offer on February 7, 2005.

In its judgment, the trial court stated that, under the Restrictions, the Hansons had fifteen days from the February 7, 2005, telephone conversation to match the offer made by the Trust Beneficiaries. It

further found that the Hansons did not do so and, instead, affirmatively stated during the telephone conversation that they would not do so. The trial court found that the Sale Contract between the Bank and the Trust Beneficiaries was the direct consequence of the Hansons' statement that they would not pay more than their initial offer of $135,000. After noting that the Restrictions required written notice to be given, the trial court found that actual notice was sufficient and literal compliance with the Restrictions "was not crucial." It relied upon *Gateway Frontier Properties, Inc. v. Selner, Glaser, Komen, Berger & Galganski, P.C.*, 974 S.W.2d 566 (Mo.App. E.D.1998), for this proposition.

In *Gateway*, a law firm entered into a lease for office space. *Id.* at 567. The principals of the law firm personally guaranteed the law firm's performance of the lease. *Id.* at 567–68. The guaranty, as part of the lease document, provided that:

> The lease may be modified without notice to the undersigned and without release of the undersigned from its liability hereunder and the undersigned waives notice of acceptance or of non-performance or non-payment by the Tenant., [sic] *unless the modification shall increase the liability of the undersigned, in which case notice shall be required.*

*Id.* at 568 (emphasis added). A paragraph in the lease, entitled notices, provided "that all notices which one party is required to give the other shall be in writing and mailed to the persons and addresses provided therein." *Id.*

The law firm subsequently exercised its option to extend the term of the lease and to increase the amount of leased space. *Id.* The guarantors of the lease were notified of the extension of the lease and expansion of the lease premises. *Id.* The law firm subsequently ceased operating and eventually owed approximately $230,000 in delinquent rent to the landlord. *Id.* The trial court determined and the parties agreed that the guaranty was unambiguous. *Id.* at 569. The trial court held as one of multiple alternate rationales for its decision that the guarantors were entitled to judgment because they did not receive notice of the lease extension. *Id.* The court noted that the guarantors were entitled to notice if their liability under the lease increased, which it did when the lease premises were expanded. *Id.* As the guarantors were not given written notice, their duty was discharged. *Id.* The trial court entered judgment against the law firm for the delinquent rent, but it refused to hold the guarantors liable under the guaranty. *Id.*

On appeal, the Eastern District stated that the written notice required by the lease was not provided. *Id.* at 571. It further stated that the guarantors had actual notice of the lease modifications. *Id.* It stated, "Even though the guarantors had a right, according to the lease, to receive a notice in writing, they had actual knowledge of the amendment and they were not harmed by [the landlord's] failure to complete the act of giving formal notice and cannot complain." *Id.* In reaching this conclusion, the Eastern District relied upon Missouri caselaw involving notice required by statute, wherein it was "held that generally, one having actual notice is not prejudiced by and may not complain of the failure to receive statutory notice." *Id.* (citing *Macon–Atlanta State Bank v. Gall*, 666 S.W.2d 934, 940 (Mo.App. W.D. 1984)). It further relied upon a case holding "that notice to exercise a lease option is sufficient if it is actually received, despite failure to comply with the lease's specifications on the type and manner of notice." *Id.* (citing *M.D. & Associates, Inc. v. Sears, Roebuck & Co.*, 749 S.W.2d

454 (Mo.App. S.D.1988)). The court concluded, "The same type of reasoning applies here. The guarantors were aware of the modification of the lease and accepted its terms. Thus, literal compliance with the lease provision as to notice was not crucial in this situation." Id. Utilizing this case, the trial court determined that the Hansons had actual notice of the Trust Beneficiaries' offer and, thus, the fifteen day time period within which they were to exercise their preemptive right began running from the date they received actual notice.

 " '[A] restrictive covenant is a private contractual obligation generally governed by the same rules of construction applicable to any covenant or contract.' " *Wildflower Cmty. Ass'n, Inc.*, 25 S.W.3d at 534 (citation omitted). The cardinal rule of contract interpretation, and thus for interpretation of a restrictive covenant, is that the parties' intentions "must be ascertained and given effect." *Jackson County v. McClain Enters., Inc.*, 190 S.W.3d 633, 640 (Mo.App. W.D.2006). *See also Kling v. Taylor–Morley, Inc.*, 929 S.W.2d 816, 819 (Mo.App. E.D.1996)("Where possible, courts give effect to the intent of the parties as expressed in the language of the covenant."). "Unless the contractual provisions are ambiguous, the contract language alone is used to determine the parties' intent." *Wildflower Cmty. Ass'n, Inc.*, 25 S.W.3d at 534. Contract terms "are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859 (Mo. banc 2006). The parties' intent can be determined by "inquir[ing] into the purpose sought to be accomplished" by the restrictive covenant. *Kling*, 929 S.W.2d at 819. Each contractual provision "is construed in harmony with the others to give each provision a reason-

able meaning and avoid an interpretation that renders some provisions useless or redundant." *Wildflower Cmty. Ass'n, Inc.*, 25 S.W.3d at 534.

 The right of preemption provision contained in the Restrictions states in relevant part:

No sale, contract to sell, or conveyance of the real estate herein described shall be made or consummated without first giving at least fifteen (15) days written notice to Grantor, and to the owners of the two side adjoining lots, of the proposed sale price and terms thereof; and thereupon the Grantor and/or either of the side adjoining lot owners shall have the first and prior right, option, and privilege during said period of fifteen (15) days to buy said real estate at the same price and upon the same terms.

There is no dispute that the Hansons are owners of a side adjoining lot and are granted a preemptive right with respect to Lot W–2. Pursuant to the unambiguous language of the provision, their preemptive right arises from the "sale, contract to sell, or conveyance" of Lot W–2. Further, any "sale, contract to sell, or conveyance" of Lot W–2 "*shall not* be made or consummated without first giving ... written notice." The written notice must contain "the proposed sale price and terms thereof." The language used in the provision is "shall not"; written notice is not optional.

Recognizing this, the Association has a standardized form titled the Notice of Sale that is utilized when property encompassed by the Restrictions is sold. The Notice of Sale informs the Association and the two side adjoining lot owners of the price and terms of a sale, so that they can decide whether to exercise their preemptive right. It also allows them to sign and affirmatively waive their right. Written notice was required, and the Hansons ex-

ercised their preemptive right within fifteen days of receiving the Notice of Sale.

The Trust Beneficiaries cite cases stating that written notice, though required by statute, is not critical when there has been actual notice. *See Macon–Atlanta State Bank v. Gall*, 666 S.W.2d 934, 940 (Mo. App. W.D.1984)("**Statutes that impose certain technical requirements for notice should not be strictly enforced where the party seeking enforcement had actual notice and cannot show prejudice as a result of the failure to follow the technical requirements.**"); *Graves v. City of Joplin*, 48 S.W.3d 121, 124 (Mo. App. S.D.2001)("**Generally, a party who has actual notice is not prejudiced by and may not complain of the failure to receive statutory notice.**"); *Weaver v. Kelling*, 53 S.W.3d 610, 616 (Mo.App. W.D. 2001). The Trust Beneficiaries also cite cases from other jurisdictions in support of their argument that written notice was not necessary. This case does not involve statutory notice. Thus, this court finds cases holding that statutory notice is not critical when actual notice has been given inapposite to the issue presented in this case. Further, given that the preemptive right language in the Restrictions is unambiguous, this court declines to examine law from other jurisdictions.

The Trust Beneficiaries further cite *Gateway*, relied upon by the trial court. *Gateway* is the only Missouri case this court or the parties have found holding that written notice required in a contract between private parties is not crucial if actual notice is given. Moreover, no other Missouri case has cited or relied upon *Gateway* for this proposition. *Gateway* reached its conclusion by examining cases pertaining to statutory notice, an analysis this court questions. Moreover, *Gateway* is distinguishable from the case *sub judice*. The purpose of the written notice provision in *Gateway* was to ensure that the guarantors would be personally accountable for any additional increased liability only if they were aware their liability had increased. Thus, the intent was to hold the guarantors accountable only for that liability to which they agreed or acquiesced. In contrast, the purpose of the written notice provision in the Restrictions is to inform those granted a preemptive right of the opportunity to exercise their right and to start the running of the fifteen day time period in which they must exercise the right if they so choose. The intent of the written notice requirements in *Gateway* and the case *sub judice* are different. Accordingly, *Gateway* is distinguishable and inapplicable to this appeal.

Moreover, the notice required is notice of "the proposed sale price and terms thereof." In the February 7, 2005, telephone call the Bank informed Mr. Hanson that the Trust Beneficiaries offered to purchase the property for $135,500. Nothing was relayed about the sale's terms. As noted by the trial court in its judgment, the Bank candidly admitted that it called Mr. Hanson in an attempt to stimulate a bidding contest and raise the price of Lot W–2 so as to obtain maximum value. It was not calling to inform him that an offered price had been or would be accepted. It was not calling to inform him that Lot W–2 would be sold for that price to either the offeror or one of the parties with a preemptive right. The purpose of the Bank's telephone call was to increase the asking price—not to impart actual notice that the Bank intended to sell Lot W–2 for $135,500.

"The authorities describe the right of pre-emption as a conditional option under which the pre-emptioner has the right to purchase subject to some condition, the condition being generally (despite variation in phraseology) that the owner must first

arrive at a decision to sell." *Gilmore v. Letcher*, 508 S.W.2d 257, 262 (Mo.App. 1974). "When the owner does arrive at a decision to sell the property, then the condition precedent becomes fulfilled and the pre-emptive right, which theretofore was merely contingent, at that point ripens into a full option." *Id.* At the time of the telephone conversation, the Bank had not determined to sell the property for $135,500. Thus, the Hansons did not have the right to exercise their preemptive right. If they could not yet exercise their preemptive right, the fifteen day time period could not yet have begun.

Mr. Hanson understood he had a preemptive right. Bidding against the Trust Beneficiaries would have been detrimental to his personal financial interests and would have raised the sale price when he knew he had the preemptive right to purchase Lot W–2 at the price for which the Bank was willing to sell. Thus, he merely had to wait until the Bank deemed an offer acceptable, and he could exercise his preemptive right and match the offered price. As stated by the Hansons in their brief:

> It is hard to imagine what more Appellants, as lay people, could do to follow the rules and exercise their right of first refusal to buy Lot W–2, the lot next door. They read the clear and unambiguous language of the Restrictions. They put in bid on the property, matching the appraised fair market value. They declined bidding against themselves in an "auction" on the property because they understood that they had the preemptive right to meet the price and terms of any proposed contract to sell the lot. They waited to receive the required written notice and, once received, they timely responded with a matching offer, *i.e.,* for the same price and on the same cash (as opposed to owner finance) terms.

The Trust Beneficiaries claim that the purpose of the Restrictions' written notice requirement is to insure the Hansons received notice that the Trust Beneficiaries had made an offer to purchase so they could counteroffer and meet the same terms offered by the Trust Beneficiaries. The primary purpose of the written notice, according to the Trust Beneficiaries, was to insure notice was received. This occurred, they claim, in the February 7, 2005, telephone conversation, and the intent of the written notice provision was achieved. They assert that, because the Hansons received actual notice of their offer to purchase Lot W–2 in the February 7, 2005, telephone conversation, the purposes of the written notice requirement were served. This contention fails for the reasons set forth, *supra.*

The Hansons' preemptive right did not entitle them to purchase Lot W–2 for any price offered to the Bank. Instead, it entitled them to purchase Lot W–2 on the price and terms acceptable to the Bank. For example, if the only offer made to the Bank was for $100, the Hansons would not automatically have the right to purchase Lot W–2 for $100. Instead, they would have to wait until the Bank obtained and accepted a satisfactory offer contingent on the Hansons in evoking their right of purchase. The Hansons would then have the option to match the sale price actually deemed acceptable by the Bank.

### Claim That Hansons Modified Terms of the Offer

Alternately, the Trust Beneficiaries argue that the Hansons' exercise of their preemptive right, even if timely, was ineffective because they changed the terms of the offer by modifying the closing date. The Trust Beneficiaries offered to purchase Lot W–2 with a closing date of

March 1, 2005. The Hansons, in exercising their preemptive right, requested that the closing date be modified "to reflect the minimum 15 days as stipulated by the notice." The Trust Beneficiaries claim that because the terms were modified, the Hansons improperly and ineffectively exercised their preemptive right.

This contention fails. Any "sale, contract to sell, or conveyance" of Lot W–2 was subject to the preemptive rights set forth in the Restrictions. Pursuant to the Restrictions, any "Sale, contract to sell, or conveyance" of Lot W–2 "shall not be made or consummated" without fifteen days notice. The Hansons were sent written notice on February 15, 2005, which they received on February 19, 2005. The closing date in the Sale Contract was March 1, 2005, less than fifteen days after the written notice was given. They requested that the Sale Contract be changed to comply with terms of the Restrictions to which it was subject. The Trust Beneficiaries cannot add terms to the Sale Contract in contravention of the requirements set forth in the Restrictions and then complain that the preemption right was ineffectively exercised when the Hansons requested that the Sale Contract comply with the Restrictions.

### Claimed Waiver of Preemptive Right

Alternately, the Trust Beneficiaries argue that the Hansons waived their preemptive right under the Restrictions. The trial court also cited this rationale for its judgment. Following the offer made by the Trust Beneficiaries, a representative from the Bank telephoned the Hansons. The representative informed Mr. Hanson that the Trust Beneficiaries were offering to buy Lot W–2 for $135,500 and asked if they wished to bid against the Trust Beneficiaries. The Hansons declined to enter into a bidding contest and/or auction, stated they were not interested in "proceeding in this manner," and said that they would not offer any additional money. Both the trial court and the Trust Beneficiaries characterize this conversation as one wherein the Hansons waived their preemptive right under the Restrictions.

Waiver is an intentional relinquishment of a known right that can be shown by express declarations or conduct. *Bartleman v. Humphrey,* 441 S.W.2d 335, 343 (Mo.1969). Parties can waive rights of first refusal. *See, e.g., Greenwood v. Sherfield,* 895 S.W.2d 169, 171 (Mo.App. S.D. 1995). "A party may waive any condition of a contract in the party's favor, and that waiver may be implied from conduct." *Spencer Reed Group, Inc. v. Pickett,* 163 S.W.3d 570, 574 (Mo.App. W.D.2005) (citation omitted). "However, to rise to the level of a waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible." *Id.*

The Hansons never stated they were not interested in purchasing Lot W–2. Instead, Mr. Hanson expressed his desire to the Bank to exercise the right of purchase, asserted he would not enter into a bidding war, and stated he would not offer to purchase Lot W–2 for a price above that offered by the Trust Beneficiaries. This was a logical course of action. The Hansons understood they had a preemptive right allowing them to purchase Lot W–2 for the price for which the Bank was willing to sell it. They did not need to better the Trust Beneficiaries' offer. Instead, if the Bank chose to sell Lot W–2 for the Trust Beneficiaries' offer, the Hansons merely had to match that price. Further, they knew they would receive written notice informing them of the price and terms for which the Bank eventually

determined to sell Lot W–2. Thus, they waited for the Notice of Sale form and, upon receiving it, timely exercised their preemptive right. There was no waiver.

The Hansons' first point is granted.

### Point II

In their second point, the Hansons claim the trial court's judgment was against the weight of the evidence because they properly exercised their preemptive right. This point need not be addressed given the disposition of the first point.

### Conclusion

The Hansons did not waive and properly exercised their preemptive right within the fifteen day time period. As it found the Hansons waived or failed to timely exercise their preemptive right, the trial court did not address other contentions raised by the parties, such as the contention raised by the Trust Beneficiaries that the Restrictions did not apply to intra-family transfers or that the Association has waived the restrictions as to intra-family transfers. The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.