**Diana KRITZER, Appellant,**

v.

**The CURATORS OF the UNIVERSITY OF MISSOURI, Respondent.**

**No. WD 69457.**

Missouri Court of Appeals, Western District.

May 12, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 23, 2009.

Application for Transfer Denied Sept. 1, 2009.

David J. Moen, Jefferson City, MO, for appellant.

Paul R. MaGuffee, Columbia, MO, for respondent.

Before JOSEPH P. DANDURAND, P.J.[1], HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Diana Kritzer appeals the judgment denying confirmation of a purported arbitration award and finding that an employer was exempt from chapter 536.010. She claims on appeal that the trial court's judgment was not supported by substantial evidence, that the trial court's judgment was against the weight of the evidence, and that the trial court erroneously applied the law. The judgment is affirmed.

## Facts

Diana Kritzer worked for the University of Missouri[2] as a registered nurse. The

1. Judge Dandurand was a member of the court at the time the case was submitted but was not a member of the court at the time of handdown.

2. The University of Missouri's official legal name is the Curators of the University of Missouri.

University offered inducement to Ms. Kritzer to remain with the University by offering an agreement called a Retention Compensation Agreement, which she accepted. The agreement provided that she would be paid "retention bonus" funds in return for staying with the University for three years. The money was to be paid in several stages, but the entire retention bonus was contingent on her staying voluntarily for the entire three year period. If she voluntarily terminated her employment before the three years expired, she would be required to pay back any bonus money she had received. If she were terminated by the University, she would be able to keep the money she had already received as well as future sums; however, an exception was provided if she were terminated "for cause." In the event of termination for cause, she would have no claim for any bonus beyond what she had already received. The agreement was to expire on February 11, 2005.

The University terminated Kritzer on December 6, 2004, for alleged misconduct related to maintenance of patient records. Kritzer appealed her termination.

The University has a regulation and a human resources policy manual containing provisions pertaining to appealing termination from employment. Included are provisions governing grievance procedures and prescribing several steps in the grievance process. The first three steps are entirely informal: (1) after discussion with immediate supervisor, the aggrieved former employee may file a written grievance with a supervisor, department head, or designated University representative, with a copy to the Campus Grievance Representative; (2) the aggrieved former employee may appeal to the Campus Grievance representative; and (3) the aggrieved former employee may appeal to the University Grievance Representative.

The fourth and fifth steps are more formal. The fourth step of the grievance procedure allows the aggrieved former employee to a hearing before a formal "grievance committee," composed in accordance with procedures established in the policy. The fifth step involves a review of the decision of the grievance committee by the Board of Curators in the event of appeal by either party from the grievance committee determination. The policy expresses no limitations on the review authority of the Board of Curators, although it appears that if there is no appeal to the Curators by either side, the ruling or recommendation of the grievance committee becomes the final decision.

Ms. Kritzer was unsuccessful in the first three steps of the grievance procedure. She appealed her termination to a hearing before the grievance committee.

Pursuant to the regulation and the policy manual, the grievance committee consists of three individuals: the University and the grievant each select one member, and the third member, the chair of the proceeding, is selected by the other two members or from a list of professional arbitrators supplied by the Federal Mediation and Conciliation Service. In this case, the latter procedure was followed.

At the grievance hearing, Kritzer appeared in person and through counsel, and the University appeared through counsel. Witnesses presented testimony under oath and were cross-examined. The grievance committee, in a decision authored by the professional arbitrator, found that Kritzer should not be terminated but, instead, should be reinstated to employment, subject to a two week suspension.

The University appealed the grievance committee's decision to the Board of Curators. The Curators, after review of the matter, rejected the recommendation of

the grievance committee. The Curators upheld Kritzer's termination on the grounds asserted.

Kritzer brought two actions at law with respect to the University's grievance procedure. On January 2006, she filed a petition to confirm the grievance committee decision, contending that it was an enforceable and final arbitration award, not subject to plenary review by the Curators (case no. 06–BA–C00397). She subsequently filed a suit seeking review of her case under chapter 536 for judicial review of an agency proceeding (case no. 06–BA–CV02922). The cases were consolidated in Boone County Circuit Court.

The court conducted a trial of the issues as to whether the parties entered into an agreement for a binding arbitration. It ruled that they had not done so, finding therefore that the grievance "award" remained subject to the determination of the Curators. The court denied confirmation of the purported award. As for the petition for review under chapter 536, the trial court granted summary judgment in favor of University on the ground that Kritzer was not entitled to judicial review under chapter 536.

Kritzer appeals. She does not contend on appeal that her termination was not "for cause." She argues that the decision by the Curators to terminate her was invalid because the Curators were bound by an arbitration award resulting from step four of the grievance procedure. She also contends that the court erred in denying review of the proceedings under Chapter 536, the Missouri Administrative Procedure Act.

## Standard of Review

■ The judgment of a court-tried case will be upheld unless it is not based on substantial evidence, is against the weight of the evidence, or is based on an erroneous declaration or application of the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "The evidence and all reasonable inferences will be viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences must be disregarded." *Parks v. MBNA Am. Bank*, 204 S.W.3d 305, 310 (Mo.App.2006). "In addition, all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *Jones v. Grant*, 75 S.W.3d 858, 862 (Mo.App.2002). "The trial court's conclusions of law, however, will be independently reviewed." *Id.*

■ In determining whether parties are bound by an agreement to arbitrate, the court must determine "whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 357 (Mo. banc 2006). "In making these determinations, the court should apply the usual rules of state contract law and canons of contract interpretation." *Id.* at 357–58. "Appellate review is *de novo*." *Id.* at 358.

Appellate review of a summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We apply the same criteria for testing the propriety of summary judgment on appeal as those the trial court uses to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is appropriate where the moving party establishes a right to judgment as a matter of law and no genuine issue of material fact exists. *Id.* at 378.

## Point I

Kritzer's first point relates to the claim of binding arbitration. She argues that the

court erred in refusing to confirm and enforce the grievance committee decision as an arbitration award because its judgment was not supported by substantial evidence and it erroneously applied the law. Kritzer claims that there was an agreement to arbitrate between Kritzer and the University. Although Kritzer does not argue that the proceedings constituted an arbitration under the Federal Arbitration Act or the Missouri Arbitration Act, she argues that it was nonetheless a binding "common law arbitration" proceeding.

■ She maintains that the agreement was shown by the fact that there was evidence that the parties participated in proceedings that were considered arbitration. Ms. Kritzer also states that the resulting award in her favor was proper on its face and not a result of corruption, fraud, or other undue means. Thus, she concludes the resulting "award" became binding on the parties.

Kritzer claims that the findings of fact by the trial court are against the weight of the evidence and are not supported by substantial evidence. In arguing that there was shown to be an agreement for a "common law arbitration," Kritzer relies on *Masonic Temple Association of St. Louis v. Farrar*, 422 S.W.2d 95 (Mo.App. 1967). In that case, The Masonic Temple Association of St. Louis and the West Gate Lodge No. 445 disagreed over whether the Lodge could terminate its status as a member of the Temple Corporation. *Id.* at 102. There was a section in the Lodge By–Laws relating to settlement of disputes between Lodges and Building Associations. *Id.* The Temple Corporation agreed to submit the dispute to the Ways and Means Committee, though it was of the opinion that the controversy was not of the type contemplated by the by-laws. *Id.* at 103. The Lodge also agreed to submit the

dispute to the Committee. The Temple Corporation and the Lodge appeared before the Ways and Means Committee in a formal proceeding. A record of the proceeding was made, and the parties filed briefs. *Id.* at 103–04, 106. The Ways and Means Committee forwarded its formal report of findings and determination in favor of the Lodge to the Grand Master. *Id.* at 106.

At the next annual meeting, the Temple Corporation asserted that the conclusion of the Ways and Means Committee and its disposition of the case should be subjected to a review by the Jurisprudence Committee of the Grand Lodge. *Id.* The Lodge argued that the Jurisprudence Committee did not have jurisdiction to decide any question of civil law, but participated in the proceeding nonetheless. *Id.* The parties appeared before the Jurisprudence Committee and again presented evidence; also, all of the documents, other evidence and a record of all of the proceedings that took place at the hearing before the Ways and Means Committee were made a part of the record for the Jurisprudence Committee to consider. *Id.* The parties again filed briefs. *Id.* at 107. The Jurisprudence Committee, like the Ways and Means Committee before it, found in favor of the Lodge. *Id.* at 108. The report was adopted by the assembly at the annual meeting. *Id.*

The Temple Corporation nevertheless brought an action in circuit court against the Lodge seeking a decree and judgment declaring that the Lodge did not have the right to withdraw its membership in the Temple Corporation and did not have the right to terminate the contractual relationship then in existence. *Id.* at 97. After the Temple Corporation was successful in the trial court, the Lodge appealed. *Id.*

On appeal, the court noted that "[a]rbitrations are favored and encouraged by

the courts, since the object is to obtain such a settlement as will put an end to the dispute and conclude the matter submitted." *Id.* at 109. "Courts construe the arbitration proceedings with liberality, on the theory that justice may on occasions be promoted by the submission of a dispute to a domestic tribunal created by the parties themselves, which, not being bound by rules of evidence, can consider facts that a court could not regard." *Id.*

The court said that the statutory and common law methods of arbitration are "concurrent remedies." *Id.* "An arbitration award, regular on its face, not the result of fraud or collusion, finally concludes and binds the parties on the merits of all matters properly within the scope of the award, both as to law and facts, and the courts will have no inquiry as to whether the determination thereon was right or wrong, for the purpose of interfering with the award." *Id.*

The court said that although there must be an agreement to arbitrate, an agreement for common law arbitration need not be expressly spelled out. *Id.* at 113. The submission by the parties of their dispute, with the intent of both parties to be bound by the ruling, is sufficient. *Id.* at 109. The agreed submission furnishes the source and prescribes the limits of the arbitrators' authority. *Id.* "The courts have always held that one who resorts to arbitration, is present at the hearing, and participates in everything that is done, will not be heard to complain of any irregularity when the award goes against him." *Id.* at 110. "If the ordinary elements of a contract are present, it is usually sufficient to show a submission if it appears from the acts of the parties that they intended to arbitrate, and that the decision of the arbitrators should have the effect of an award." *Id.* "When there has been a valid

submission and award, the law implies an agreement to abide by the award." *Id.*

The court concluded that "the Temple Corporation voluntarily submitted its controversy" with the Lodge to the Ways and Means Committee, which it was not under any compulsion to do, with the intent and purpose of having the Committee "hear and determine the controversy." *Id.* The court noted that "under the circumstances of the parties, there could be no other purpose." *Id.* It held that the Temple Corporation voluntarily entered into common law arbitration. *Id.* The court found that the facts demonstrated that the Temple Corporation "participated fully and completely in what we find was an arbitration proceeding [before the Ways and Means Committee], with the declared purpose [as said by the representatives of the Temple Corporation] to determine the dispute and especially the legal liability of the Lodge." *Id.* at 111. The court held that the determination of the Ways and Means Committee constituted a binding common law arbitration. *Id.*

Kritzer argues that the University's participation in the arbitration process here is evidence of an agreement to submit to arbitration. She also stresses the fact that the parties and their attorneys used the terms "arbitration," "arbitrator," and "arbitrate" with respect to the grievance committee hearing. Moreover, the grievance committee's "opinion and award" used the same terminology. Kritzer notes that while the policy manual does not expressly provide for arbitration, it does not prohibit arbitration. She also notes the formal characteristics of arbitration pursuant to Chapter 435 of the Missouri statutes that were present in the grievance committee hearing, including: the right to be represented by an attorney; the right to seek subpoenas (a "subpoena" was issued by the professional arbitrator and was com-

plied with); the right to be heard, present evidence, and cross-examine witnesses; notification of the name, experience, and educational background of the professional arbitrator; a hearing and an award in writing and signed by the arbitrators; and payment of the professional arbitrator's expenses. Kritzer concludes that the proceeding before the grievance committee was a binding arbitration and that the University's participation demonstrates an agreement to arbitrate.

While the grievance hearing here was quite formal, like the hearing in *Masonic Temple,* the trial court in this case, after hearing testimony related to whether there was an intention to submit the matter to binding arbitration, found that there was not. The court found that Kritzer and the University, in presenting the matter to the grievance committee, did not do so with the belief that the grievance committee would finally determine the controversy. The court found that both parties were well aware of the University's regulations and policies in the matter and that both parties understood that the decision of the grievance committee would not be a final determination. The applicable University regulations and policy made clear that the determination of the grievance committee could be appealed to the Curators by either party. When there is an appeal, the Curators are obligated to familiarize themselves with the grievance determination and the "award" of the grievance committee, but no restriction is placed on the scope of their review, which appears to be plenary.

There was evidence that Kritzer herself was not under any illusion of finality attending the grievance determination. She testified that though she appealed to the grievance committee, she did not intend to give up any right she might have to challenge her termination in court. She also understood that either party could appeal the decision of the grievance committee to the Board of Curators, who would not be bound by the ruling or recommendation. The trial court noted also that, after the grievance committee's decision, the parties agreed to extend the time in which either party could appeal to the Curators so that the parties could engage in settlement negotiations. There was no evidence that either party believed that the Curators' review was limited in any way. These facts support the trial court's determination that the parties did not intend or expect the grievance committee to finally resolve the dispute.

The focus is on what the parties believed at that time. The trial court, as fact finder, determined that they did not believe they were submitting to binding arbitration. The trial court is in a superior position to make that determination. *Custom Muffler & Shocks, Inc. v. Gordon P'ship,* 3 S.W.3d 811, 817 (Mo.App.1999).

The University officer (a non-lawyer) who had dealt with Ms. Kritzer explained to the court that he had made an unfortunate use of the terms "arbitration," and "arbitrate" as a short-hand reference to the fourth step of the grievance procedure and that he had referred to the third member (the neutral member) of the grievance committee as an "arbitrator" without intending the technical meaning of the term. The officer had used the term to refer simply to the process of being a decision maker, whose recommendation would be subject to the Curators' approval. The University's attorney had also casually used a subject line reference of "arbitration" in correspondence with Kritzer's attorney but, the evidence showed, without an intention to regard the grievance hearing as a binding arbitration. The trial court found the University's witnesses credible, believing that the usage of that

terminology, which unfortunately tends to invite confusion, was a shorthand way to refer to the grievance committee hearing step of the grievance process. The University's regulations and policy manual do not refer to the grievance committee determination as "arbitration." The usage here was simply an ill-advised misunderstanding of the meaning of the term. The court also found that Kritzer was not misled by the terminology. We defer to that determination because it was supported by substantial evidence and was not against the weight of the evidence. *Custom Muffler,* 3 S.W.3d at 817.

*Masonic Temple* does not require reversal in this case. In *Masonic Temple,* both parties voluntarily submitted their dispute to the procedure in an entirely voluntary way with intent to resolve the matter without judicial intervention. Here, in contrast, the entire grievance procedure was set out in detail in the University regulations and policy manual, which clearly governed the matter.

Here, also, despite the semantical irregularities in the use of the term "arbitration," the court could find that the Curators had not delegated the ultimate responsibility for decision-making on the claim to the grievance hearing. The Curators had delegated the *conduct of a hearing* to the grievance proceeding and had authorized the grievance committee to *make a determination* and to submit a *written report with findings and conclusions.* The University obviously wanted a formal hearing conducted by a person qualified by experience and training to conduct a proceeding in a professional way, much like a court might engage a "special master" for a similar purpose. But there is no indication in the regulations and policy that the Curators were delegating out the ultimate responsibility with the intent to be bound thereby.

Kritzer argues that the grievance committee hearing is meaningless if it can be summarily set aside by the Curators. It is very true that the hearing would be more meaningful if the proceeding were in fact binding arbitration. And no doubt it was a burden to Ms. Kritzer to go through the expensive (sharing arbitrator fees and incurring attorney fees) and time-consuming grievance hearing, and gain an "award," only to suffer the disappointment of having that "award" reversed by the Curators. But there is no contention here that the grievance process established by the University somehow is tortious or amounts to a deprivation of rights in itself simply by virtue of its terms. Also, the procedure in question, despite the semantical confusion, did fulfill the purpose of creating a record of the proceeding and a written decision (relatively favorable to Kritzer) for the review of the Curators.

Kritzer cites no authority for the proposition that the grievance committee hearing must be considered arbitration merely because it had significant characteristics of arbitration, including a paid professional arbitrator whose fees were shared by both parties. The test, as set forth in *Masonic Temple,* is whether the parties *agreed* to submit the disagreement to a forum for a *final* resolution. The trial court found that the parties did not have such an agreement. This finding is supported by substantial evidence, and the trial court did not misapply the law. The point is denied.

**Point II**

Kritzer's second point relates to the petition for review under chapter 536. She contends that the court erred in granting the Curators' motion for summary judgment because the trial court ruled against the weight of evidence and misapplied the law. Kritzer maintains that the trial court

incorrectly found that she had no property interest in her employment and, accordingly, had no right to a hearing or judicial review of her grievance under chapter 536. Kritzer argues that she had an "employment contract" which provided that she could not be terminated except for cause and provided for a hearing in the event she was aggrieved in her employment and, therefore, Kritzer says this was a contested case, and there should be an opportunity for judicial review under chapter 536.

■■■ "[T]here is no general right to continued public employment in Missouri; such a right must be shown to exist by statute, ordinance, regulation, or employment contract." *Schlientz v. Rock Twp. Ambulance Dist.*, 146 S.W.3d 404, 405 (Mo. App.2004). An at-will employee is not entitled to judicial review under chapter 536. *See McCoy v. Caldwell County*, 145 S.W.3d 427, 428–29 (Mo. banc 2004) (discussing sections 536.100 and 536.110); *Cole v. Conservation Comm'n*, 884 S.W.2d 18, 20 (Mo. App.1994) ("[A]n at-will public employee is not entitled to judicial review of termination under section 536.150.").

■ Kritzer argues that her retention agreement is an employment contract and provides that she could be terminated only for cause. Accordingly, she claims she was not an at-will employee. While the fact that there was a written agreement that was related to employment creates the initial impression that there was a "contract of employment," we must give attention to the terms of the document to see it the contract actually changed the at-will employment status of Ms. Kritzer. The retention agreement states in pertinent part:

7. This is an agreement to remain in the employment of University of Missouri Health Care for a 3–year period. If you decide for any reason to leave the full-time employment of the University of Missouri Health Care prior to the expiration of this agreement, you will be obligated to return the total gross amount of all of the total retention compensation payments which you have received under this agreement from the date you signed the agreement through the date of your termination of employment . . .

8. If your employment is terminated by University of Missouri Health Care during this agreement for reasons other than termination for cause and an equivalent eligible position is not available at the time of termination, you will be entitled to a buy-out payment of all the remaining retention compensation payments which you would have received under this agreement from the date your employment is terminated through the date which is 3 years from the date you signed this agreement. . . . If your employment is terminated for cause during the term of this agreement then your right to receive any further retention compensation payments under this agreement will also terminate.

9. Your employment will otherwise continue to be at will and subject to all Rules and regulations of the University of Missouri Health Care, all of the University's human resource policies and procedures and the schedule of employment benefits described therein. For example, you will continue to be eligible to work additional shifts and to be paid according to the applicable overtime policy of the University of Missouri Health Care. However, if you enter the Disciplinary Process for performance related issues during this contract period and reach the level of suspension, your continued participation in this contract will be terminated.

■■ "The cardinal rule of contract interpretation, and thus for interpretation of

a restrictive covenant, is that the parties' intentions must be ascertained and given effect." *Blue Ridge Bank & Trust Co. v. Trosen,* 221 S.W.3d 451, 459 (Mo.App. 2007). "Unless the contractual provisions are ambiguous, the contract language alone is used to determine the parties' intent." *Id.* "Contract terms are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *Id.*

■ "The granting of a right to appeal does not of itself change an employee's status as an employee at will." *Sadler v. Vill. of Bel–Ridge,* 741 S.W.2d 889, 891 (Mo.App.1987) (discussing the right of a disciplined or dismissed police department employee to appeal a decision of the Chief of Police). *See also McCoy v. Caldwell County,* 145 S.W.3d 427, 428–29 (Mo. banc 2004) (terminated police deputy was entitled to a hearing including findings of fact, but the sheriff had the final decision-making authority).

In *Kunzie v. City of Olivette,* 184 S.W.3d 570, 572–73 (Mo. banc 2006), a personnel appeals board reviewed certain employment decisions. The board served as an "advisory body to hear and make written recommendation to the City Manager regarding appeals from city employees of the discharge, suspension, discipline, or other penalizing actions of the city manager." *Id.* at 572. The applicable procedure provided that "[w]ithin five days of receipt of the recommendations of the Board, the City Manager shall make his decision which shall be final." *Id.* at 573. Relying on *McCoy,* the court held that "the hearing procedures here do not determine a city employee's legal rights, duties, or privileges." *Id.* "As in *McCoy,* the city manager's decision is not subject to any gauge or criteria, and the city manager can fire a city employee despite contrary recommendation findings." *Id.* The court held that

city employees are not entitled to review under chapter 536. *Id.*

The fact that Kritzer was entitled to a hearing before the grievance committee and an appeal to the Board of Curators does not change her status as an at-will employee. The Board of Curators retained the ultimate decision-making authority and were not required to follow the grievance committee's findings. *See also Schlientz v. Rock Twp. Ambulance Dist.,* 146 S.W.3d 404, 405 (Mo.App.2004) (stating that an employer policy establishing a system of verbal and written warnings to precede termination does not create a right to continued employment).

The agreement did not alter Kritzer's status as an at-will employee. *See Carner v. City of Excelsior Springs,* 674 S.W.2d 274, 275 (Mo.App.1984). The agreement discusses the repercussions of termination for cause as opposed to termination not-for-cause but does not provide that Kritzer could be terminated only for cause. *See also Cole v. Conservation Comm'n,* 884 S.W.2d 18, 20 (Mo.App.1994) (employee was at-will when cause not required for termination). Here, Kritzer could be terminated without cause, without any penalty or further payment by the University.

The retention agreement provided that termination for reasons other than cause would entitle her to receipt for all remaining payments. Paragraph 8 expressly recognizes that Kritzer could be terminated for reasons other than cause. Paragraph 9 expressly confirms her status as an at-will employee. The language pertaining to the consequences of being suspended for performance related issues addresses termination of the retention agreement, not termination of employment.

Kritzer relies heavily on *Daniels v. Board of Curators of Lincoln University,* 51 S.W.3d 1 (Mo.App.2001), in which the

court determined that an employee handbook created an understanding that employees would not be terminated unfairly or without a hearing. The court recognized *Cole v. Conservation Commission,* 884 S.W.2d 18 (Mo.App.1994), which held that an employee manual could not be used as a way to exempt the employee from the at-will doctrine. *Daniels,* 51 S.W.3d at 10. It distinguished *Cole,* however, because the employee manual in *Cole* "explicitly stated that nothing in the manual required the employer to have just cause to terminate any employee at any time for any reason." *Id.* In this case, the retention agreement explicitly states that Kritzer's employment was at-will, as in *Cole. Daniels* does not dictate a different result.

As an at-will employee, Kritzer was not entitled to review under chapter 536. Summary judgment in the University's favor was not against the weight of evidence and did not misapply the law. The point is denied.

## Point III

Kritzer's third point also relates to the petition for review under chapter 536. She argues that the trial court erred in granting the motion for summary judgment because the court ruled on and granted the University's motion for summary judgment before it had reviewed response by opposing counsel. Kritzer's argument is apparently premised upon the fact that suggestions in opposition could not be located by court personnel when assembling the record on appeal.

Kritzer's response to the motion for summary judgment was filed via facsimile in a timely manner, but the docket sheet does not show that it was ever entered on the docket or included in the file in *that* case. Kritzer therefore maintains that the trial court did not review all pertinent papers as required by Rule 74.04(c)(6).

Unfortunately, confusion was created when there were two cases (consolidated for some purposes) pending at the same time with the same parties, but with different case numbers, and Kritzer labeled her suggestions in opposition with the wrong case number. Each pleading in the record was labeled with either case no. 06–BA–C00397 or case no. 06–BA–CV02922. While Kritzer's suggestions in opposition in the chapter 536 case pertained to case no. 06–BA–CV02922, the document was inadvertently labeled as case no. 06–BA–C00397. This scrivener's error presumably caused the misplacement of the suggestions in opposition.

In any event, the trial court *did* timely receive and note the suggestions in opposition in the chapter 536 case. The transcript reveals that before the trial in the alleged arbitration case, the trial judge stated on the record that he had in his possession Kritzer's suggestions in opposition to the University's motion in the chapter 536 case (not the arbitration claim being tried that day). The record shows that the trial judge informed the parties in court that the suggestions in opposition were incorrectly labeled with the case number of the arbitration case. Thus, we know the judge was aware of the existence of the suggestions. While there is no way to determine on this record that the trial judge actually read and considered the suggestions in granting the motion for summary judgment, we must assume the trial court read and considered any briefing materials he possessed unless the record indicates otherwise. There is no indication here that the court did not read the suggestions. We also cannot say that the court did not accord Ms. Kritzer the benefit of any favorable inferences. The issue was strictly one of law, appropriate for determination by summary judgment.

For this reason, the point is denied.

738

## Conclusion

The judgment is affirmed.

All concur.